NANCY PANDISCIO & another vs. ALBERT BOWEN & another.

Worcester.    March 8, 1961. — April 7, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Negligence,* Invited person, Guest, Gratuitous undertaking.

Evidence that a daughter at the request of her mother went to the home
of her mother and stepfather to assist in putting up curtains and there
went for a pair of curtains to an upstairs room where she was injured
when wallboard piled by the stepfather fell on her did not show that
at the time of her injury she was more than a mere licensee or social
guest to whom her mother and stepfather owed only the duty of refrain-
ing from acts of gross negligence.

TORT.    Writ in the Superior Court dated October 1, 1957.
The action was tried before *Coddaire,* J.
*Stanley B. Milton,* for the defendants.
*Alphonse P. San Clemente,* for the plaintiffs.
CUTTER, J.    Mrs. Pandiscio (the daughter) and her hus-
band seek to recover from her mother and stepfather (the
Bowens) for injuries on October 7, 1956, in the Bowens'
house when some sheet rock or wallboard fell against the
daughter.    There were verdicts for the daughter and her
husband upon counts alleging that the Bowens negligently
maintained the premises in unsafe condition.    The case is
before us on the Bowens' exceptions to the trial judge's
denial of their motions for directed verdicts and to his fail-
ure to order verdicts entered for them under leave reserved.
The evidence is stated in its aspect most favorable to the
plaintiffs.
The Bowens' house is a three story structure.    The sec-
ond and third stories had been occupied by the Bowens and
the plaintiffs prior to June, 1956.    The plaintiffs had used
a bedroom on the third floor as paying tenants.    In June,
1956, the plaintiffs moved to another location but were
given permission by the stepfather to leave some items,

including some curtains, in the third floor bedroom which they had formerly occupied.

On Saturday, October 6, the mother called the daughter by telephone and asked her to the Bowens' house on the next day "to help . . . put up some curtains." On Sunday, when the daughter arrived, they "talked for a few minutes — about a half hour or so" and then the mother "was going to put . . . some curtains up — and she said she needed another pair — if . . . [the daughter] would get them." The daughter went up to the third floor room to get the mother's curtains which were in a basket there. As she did so the daughter said to her mother, "Since I'm going . . . to get yours, I might as well get the ones that belong to me." As she crossed the third floor bedroom, several sheets of wallboard, "standing up, straight up and down next to the wall," with "nothing in front" of them, fell on the daughter and injured her. The daughter did not touch the wallboard before it started to fall and she did not see anything else touch it. The room was in the same condition as at the time when she left it in June "except the wallboard was stored against . . . the side of the room."

A few days later, the stepfather said, "I'm . . . sorry this happened . . . if we weren't in a hurry when we piled the wallboard straight up and down . . . it would have never happened." The stepfather had made arrangements to finish off the attic, was doing the work himself, and in the summer with another person had carried the wallboard to the third floor and stored it. The record does not indicate that the stepfather knew in advance of the daughter's proposed visit to the third floor room or that, before the accident, the mother knew how the wallboard had been piled or of any danger connected with it.

1. We assume, without deciding, that from the admission of the stepfather, if the jury believed that it had been made, it could be inferred that he had been guilty of ordinary negligence in piling the wallboard straight up and down, although the admission may not have sufficed to show causal connection between that negligence and the daughter's in-

jury. See *Machado* v. *Kaplan,* 326 Mass. 615, 617. The plaintiffs do not argue that the evidence would warrant a finding of gross negligence on the part of either the mother or the stepfather. See *Palter* v. *Zarinsky,* 338 Mass. 256, 257.

2. The basic issue is whether the daughter was conferring such a benefit upon the mother as to entitle the daughter to the care owed to a business visitor, rather than to that owed to a guest or social visitors, i.e. "to refrain from acts of gross negligence." See *O'Brien* v. *Shea,* 326 Mass. 681, 682–683 (guest helping to chase children from hostess's yard held not to have become a business invitee), and cases cited. In *O'Brien* v. *Shea,* it was said, "It is true that one who invites a person to enter upon his premises for the conferring of a benefit not necessarily pecuniary may owe to that person the duty to refrain from acts of ordinary negligence. . . . The beneficial interest, however, which the invitor has in the carrying out of this purpose must have 'a business or commercial significance and does not comprise those intangible advantages arising from mere social intercourse.'"

The concept of benefit in some instances, especially with respect to persons riding in motor vehicles, has been extended to include a benefit to some interest of the recipient, or to an activity in which a recipient of the benefit is engaged. In some instances, the pecuniary or commercial advantage to the recipient has been either slight or amounted to little more than a convenience. See *Lyttle* v. *Monto,* 248 Mass. 340, 341–342; *Semons* v. *Towns,* 285 Mass. 96, 100; *Granfield* v. *Herlihy,* 322 Mass. 313, 316; *Hanlon* v. *White Fuel Corp.* 328 Mass. 455, 458–459; *Taylor* v. *Goldstein,* 329 Mass. 161, 163–165, where the cases are collected. Cf. *Bagley* v. *Burkholder,* 337 Mass. 246, 248–249 (recipient of benefits injured). Nevertheless, a member of a family or household group or group of acquaintances rendering friendly help in household routine or commonplace tasks to another member of the group does not cease to be a licensee or social visitor unless the character

or circumstances of the assistance make it clearly the dominant aspect of the relationship rather than a routine incident of social or group activities. See e.g. *Allen* v. *Allen,* 299 Mass. 89, 90–91, where a father employed an adult son for labor at prevailing wage rates. The assistance in hanging curtains to be rendered by the daughter to the mother was casual intrafamily coöperation of a type which does not operate to make the helper more than a licensee. This is consistent with authority elsewhere (although the scope of the duty owed to a licensee as stated by other courts may vary slightly from, or be broader than, that in effect in Massachusetts). See *Laube* v. *Stevenson,* 137 Conn. 469, 471, 473; *Wilson* v. *Bogert,* 81 Idaho, 535, 546; *Ciaglo* v. *Ciaglo,* 20 Ill. App. 2d 360, 364–367; *Mitchell* v. *Legarsky,* 95 N. H. 214, 215–216; *Wilder* v. *Ayers,* 2 App. Div. 2d (N. Y.) 354, 356–357, affd. 3 N. Y. 2d 725; *Murrell* v. *Handley,* 245 N. C. 559, 561–562; *McHenry* v. *Howells,* 201 Ore. 697, 704; *Porter* v. *Ferguson,* 53 Wash. 2d 693, 694–695; *Lucas* v. *Barner,* 56 Wash. 2d 136, 137–138; Restatement 2d: Torts (Tent. draft No. 5, Apr. 8, 1960) § 330, comment h, and reporter's note, pp. 56–57; annotation 25 A. L. R. 2d 598, 605–608.

We conclude that the daughter's position, in respect of her mother, was that of a licensee or social guest. The indirect benefit to the stepfather, if there was any, from the daughter's presence and proposed activity was not substantial and there is no basis for any contention that as to him the daughter was more than a licensee.

3. Since there was no evidence of any breach of duty owed by either defendant to the daughter, verdicts should have been entered for the defendants.

*Exceptions sustained.*
*Judgments for the defendants.*