HARRY HANDLEMAN, PLAINTIFF-RESPONDENT, v. FRANK COX, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued November 19, 1962—Decided January 21, 1963.

*Mr. Samuel A. Larner* argued the cause for the defendants-appellants (*Messrs. Budd, Larner & Kent,* attorneys).

*Mr. Myron W. Kronisch* argued the cause for the plaintiff-respondent (*Messrs. Roskein, Kronisch, Felzenberg & Mandell,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.   The plaintiff, Harry Handleman, brought this action to recover for personal injuries which he sustained on June 6, 1958, as the result of a fall down a cellar stairway on the premises of the defendants, Frank Cox and Jack Tillotsen, t/a J. & J. White Diamond Co.   At the end of the plaintiff's case, the trial court granted the defendants' motion for a judgment of dismissal, and denied the plaintiff's motion to reopen his case and submit additional evidence.   On the plaintiff's appeal, the Appellate Division reversed and remanded for a new trial on the sole ground that the trial court erred in denying the plaintiff the right to reopen his case.   74 *N. J. Super.* 316 (*App. Div.* 1962).   One judge dissented, and the defendants have appealed to this court as of right.   *R. R.* 1:2–1(b).   Because we have concluded that the plaintiff made out a *prima facie* case without the additional evidence proffered by him, it is unnecessary for us to consider the propriety of the trial court's denial of his motion to reopen.

Since we are reviewing the correctness of the dismissal at the end of the plaintiff's case, we must accept as true all of the evidence and the reasonable inferences arising therefrom which are favorable to the plaintiff.   With this in mind, we believe a jury could properly find the following:   The plaintiff was employed by the Senak Corporation as a salesman and bill collector.   Senak is a retail distributor of household goods, such as silverware, dishes, electrical appliances, watches, blankets, sheets, pillow cases, and lamps.   Its representatives, including the plaintiff, solicit sales from mem-

bers of the public and collect weekly installment payments from the buyers.

The defendants own and operate the J. & J. White Diamond Diner in Westfield, which is a one-story building comprising a dining area with a counter, a kitchen, and a basement. The public entrance to the dining area and counter is in the front, facing the street, and a parking area surrounds the rest of the building. The kitchen is in the rear part of the building behind the dining area and may be reached either through an inside door from that area, or through the rear service entrance from the parking lot. All food supply and merchandise deliveries are made through the service entrance, and at the time of the accident there was no sign at the rear door prohibiting admittance by anyone.

Approximately two months before the accident, Bateman, an employee at the diner, purchased some merchandise from a Senak salesman. This sale took place at the counter in the public dining area, as did the collections of Bateman's installment payments of one dollar each week. About a month before the accident the defendant Cox's nephew, also an employee at the diner, purchased a set of silverware from a Senak salesman. He, too, made the purchase and his subsequent weekly payments at the counter. Prior to the accident, the defendant Cox knew that Senak salesmen visited the diner and that his employees made purchases from them. Indeed, Cox himself bought items for his personal use from Senak salesmen at the diner. Although the defendant Tillotsen never made any purchases from Senak salesmen himself, he allowed his employees to meet their weekly installment payments by taking money from the cash register and leaving a "takeout slip."

The plaintiff had never been in the defendants' diner before the day of the accident, but three account cards, representing previous sales at the diner by other Senak salesmen, had been given to him by Senak because the diner was within his sales territory. At about 11:30 A. M. on June 6, 1958, the plaintiff went to the diner to make a collection on one of

these accounts. He entered the diner through the front door and saw two of the employees, Lawson and Savage, behind the counter. The diner "was full * * * all the stools were taken." After the plaintiff introduced himself, Bateman, who was also present,[1] made a payment on account for merchandise which he had previously purchased. Lawson then asked the plaintiff if he had any silverware sets for sale, and upon learning he had, Lawson told him to bring the sets around to the rear entrance into the kitchen. The plaintiff left the front of the diner and went to his car to get two boxes of silverware, each approximately 18 inches long, 12 inches wide, and 5 inches deep. He carried these boxes in front of him as he walked toward the open rear door, approaching it from the side.

The rear doorway is in the center of the building, on the same level as the parking lot. Immediately inside is a raised platform measuring 38 inches in width and 29½ inches in depth. On the left of this platform is a wall and on the right another step up to the floor level of the kitchen. Directly ahead of the rear doorway is the stairway leading to the defendants' cellar. Although a railing guards the stairwell on two sides where it cuts through the kitchen floor, and the wall is on the third side, there is no gate or other device across the top of the stairs adjacent to the platform.

---

[1] In defendant Cox's answer to an interrogatory, he listed defendant Tillotsen as being present in the diner at the time of the accident. Sometime before the trial, defendants notified plaintiff that Cox was in error in this answer, and that Bateman, rather than Tillotsen, should have been listed. At the start of the trial, defendants moved to amend the answer to the interrogatory accordingly, which motion was granted by the court. Notwithstanding the amendment, however, the original answer to the interrogatory, which was introduced at the trial, remained substantive evidence of Tillotsen's presence and should have been considered on the motion to dismiss. *Bauman v. Royal Indem. Co.*, 36 *N. J.* 12, 19 (1961). This fact was apparently overlooked by the Appellate Division, since it said that Tillotsen was not on the premises. 74 *N. J. Super.*, at *p.* 328. However, in view of our disposition of this case, it is immaterial whether the defendant Tillotsen was present on the premises at the time of plaintiff's accident.

As the plaintiff approached the doorway, he saw a coffee carton, about 2 feet high and 2 feet wide, which had been placed on the platform "right in front of the stairs." As a consequence, the carton blocked his view and he did not realize the existence of the stairway. This carton was known by the defendants' employee, Savage, to have been placed there by a supplyman about 15 minutes before the plaintiff entered the doorway. Lawson met the plaintiff in the kitchen by the platform and directed him to place the silverware boxes on the railing, which had a flat top on it similar to a narrow counter. As the plaintiff placed the boxes down, he "just made one move" and fell down the stairs. After resting a few minutes, he came back upstairs where he completed sales of the silverware sets to Lawson and Savage by having each sign a receipt for his purchase. The plaintiff then left the diner and went home.

Because the depth of the platform between the doorway and the top of the stairs was only 29½ inches, it was 8½ inches short of the requirements of the local building ordinance and the National Building Code. According to evidence in the case, the requirement of a minimum depth of such a platform is intended, among other things, to warn people of the presence of a stairway.

At the conclusion of the plaintiff's case, the defendants moved for a judgment of dismissal. In granting the motion, the trial court held that although the plaintiff's presence in the front of the diner was probably under an implied invitation by the defendants, he was a trespasser when he entered the rear of the premises. The trial court further held that under the circumstances the defendants breached no duty owed to the plaintiff as a trespasser. Parenthetically we note that in the pretrial order, the defendants asserted that plaintiff's status "at the time of the accident was that of a mere licensee."

Immediately after the trial court granted the defendants' motion, the plaintiff moved to reopen his case in order to submit additional evidence which he contended would show

his status in the rear of the premises to be that of an invitee. The trial court denied this motion.

On the plaintiff's appeal to the Appellate Division, that court agreed with the trial court that when the plaintiff first entered the front of the diner, he was probably by implication an invitee, although he "did not qualify as an invitee at the moment of his fall." 74 *N. J. Super.*, at *p.* 326. But, in its view, the evidence would support a finding that plaintiff's status in the rear of the diner was that of a licensee and not of a trespasser. However, it held that the defendants breached no duty owed to the plaintiff as a licensee. The court found that the location of the stairwell and the length of the platform were not the proximate cause of the accident, but that "[i]t was the carton, in part concealing the presence of the steps, which may have proximately been responsible for the accident." *Id.*, at *p.* 329. The court further found that:

> "Savage acknowledged knowing the carton was on the platform, thus blocking a view of the cellar stairs by anyone entering through the rear door, at the time he saw plaintiff approach that door. However, neither Cox nor Tillotsen was on the premises at the time or had knowledge of this dangerous condition. On the basis of the evidence presented, neither Savage nor Lawson was performing any service for defendants in relation to plaintiff when Handleman was told to enter with the silverware at the rear entrance.
>
> \*        \*        \*        \*        \*        \*        \*        \*
>
> Therefore, even if the jury would have found plaintiff to be a licensee at the time he sustained his injuries, the dangerous condition (the obscuring of the stairs by the carton) was not actually known by defendants or by an employee performing a service for them in relation to plaintiff." *Id.*, at *pp.* 328–329.

We think the plaintiff, at the conclusion of his evidence, made out a *prima facie* case based on his status either as a licensee or as an invitee.

The extent of the duty which the defendants owed to the plaintiff depended upon his status at the time of his fall down the stairs. The plaintiff entered the rear door of the defendants' premises at the request of one of the defendants' employees in order to complete the sale of merchandise to him

and another employee. There was no sign at the rear door or any other notice to the plaintiff that his presence was disapproved by the defendants. On this basis alone, the jury could find that he occupied the status of a licensee at the time he entered the rear door and fell down the stairway. *Snyder v. I. Jay Realty Co.*, 30 *N. J.* 303 (1962). As we said in that case at *pp.* 312–313.

"We believe that visiting an employee at his place of employment, where a hazardous activity is not being conducted in the area visited, does not go beyond generally accepted modes of behavior or custom, and in the absence of any prior expression of disapproval by the employer the visitor is not a trespasser but one whose presence is suffered and therefore is lawfully upon the premises."

The duty owed by an occupier of land to his licensee with respect to natural or artifical conditions on his premises was set forth in *Berger v. Shapiro*, 30 *N. J.* 89, 98–99 (1959), to be as follows: A licensor is not required to inspect his premises to discover defects or to maintain them in a safe condition; but if he knows of a condition on the premises and realizes it involves an unreasonable risk to his licensee, and he has reason to believe the licensee will not discover such condition or realize the risk, he is under a duty to use reasonable care either to make the condition reasonably safe or to warn the licensee of the condition and the attendant risk. See also, 2 *Harper & James, Torts* § 27.9, *pp.* 1471–5 (1956) ; *Restatement, Torts* § 342 (1934).

We believe the jury could properly find that the stairwell was a concealed and dangerous condition when obscured by the coffee carton placed as it was on the platform, especially because the stairwell was separated from the doorway only by a platform, the length of which was about 20% less than the minimum standard called for by both the local building ordinance and the National Building Code. Furthermore, we think the jury could properly find that a prudent person would have reason to believe that the plaintiff would not observe the hidden danger himself, and that this condition

was the proximate cause of the plaintiff's fall down the cellar stairs.

The Appellate Division took the view that even though the plaintiff was a licensee at the time of his injury, "the dangerous condition (the obscuring of the stairs by the carton) was not actually known by defendants or by an employee performing a service for them in relation to plaintiff." 74 *N. J. Super.*, at *p.* 329. It held that therefore the defendants breached no duty owed to the plaintiff as a licensee, citing *Snyder v. I. Jay Realty Co., supra,* 30 *N. J.*, at *pp.* 317–318.

We have been cited to no authority holding that a landowner who has left the premises in the care of his employees may escape liability to his licensee for a concealed and dangerous condition on his premises merely because *he* is not present when the dangerous condition is created and therefore has no personal knowledge of the condition. On the contrary, it is well-settled that a principal is charged with the knowledge of his agent or servant respecting matters lying within the scope of the duties, activities, and responsibilities entrusted to him by the principal. 3 *Merrill, Notice* § 1205, *p.* 134 (1952); *Restatement, Second, Agency* § 283(a) (1958). As said in *Merrill, supra,* § 1212, *p.* 141: "If the property is in such condition as to create danger of injury to persons toward whom the principal owes a duty of care * * *, the knowledge of the agent [in charge of property] is notice to the principal so far as the imposition of legal liability is concerned." See also, *Mechem, Agency* §§ 485, 486, 490, *pp.* 317–320 (*3d ed.* 1923). In the present case the jury could infer that Savage, along with Bateman and Lawson, was responsible for putting food supply and merchandise deliveries in their proper places, or at least not permitting cartons to remain in a position which might cause danger to others lawfully on the premises. See *Restatement, Second, Agency* §§ 229, 232 (1958). Savage admitted knowing the coffee carton was on the platform for some time before the plaintiff entered the kitchen doorway, and the jury could find that he should have realized this situation presented the unreasonable risk

to the plaintiff described above. If the jury found, as it properly could, that this knowledge came within a responsibility lying within the scope of Savage's employment, such knowledge would be chargeable to the defendants, regardless of whether either of them was present at that time.

The *Snyder* case, relied on by the Appellate Division, is inapposite to the question of notice of the condition to the defendants. It was there argued that the tenant of a building was liable to his licensee who was injured because of a concealed and dangerous condition, even though the condition was located off the tenant's premises and in a common passageway. This court held that the tenant, as an occupier of premises, had no duty to remedy a latent danger or to warn a licensee of such danger where it was situated *off* his premises and beyond his control. *Id.*, 30 *N. J.*, at *p.* 317. Moreover, we found no basis for the tenant's liability under the principle of *respondeat superior*, since there was no evidence that the tenant's employees, in undertaking to lead the plaintiff safely through the common passageway, were performing any duties for the tenant in relation to the plaintiff. There is nothing in *Snyder* inconsistent with the rule mentioned earlier in this opinion that a principal is charged with the knowledge of his agent regarding matters within the scope of his employment.

We conclude that, at the end of the plaintiff's case, there was sufficient evidence to present jury questions whether the plaintiff was a licensee and whether the defendants had breached their duty of care owed to him in such status.

■ With respect to the question of whether the plaintiff was an invitee of the defendants when he entered the rear of the premises, we think the Appellate Division erred in its conclusion that the plaintiff's case "was devoid of any evidence or inference of an express or implied invitation from defendants to Handleman or to any Senak salesman to enter the rear room of the diner." 74 *N. J. Super,* at *p.* 326. It said that the test of an implied invitation is whether "the entry upon the premises was for a purpose directly or indi-

rectly connected with the business carried on there by the occupier, or *was of interest or advantage to the occupier*, or was in pursuance of an interest or advantage which is common or mutual to the occupier and to him who enters." *Id.*, at *p.* 330. The defendants argued, and the Appellate Division apparently agreed with them, that "the test established to create the status of a legal 'invitee' is that the purpose of his visit involve some *business benefit* to the owner," and that "unless the plaintiff's purpose involved a *business benefit* to the owners his mere business relationship with the employees did not lift him beyond the class of 'gratuitous licensee.' " (Emphasis added) We recognize that the requirement that there must be a business or economic benefit to the occupier before a person lawfully upon the premises may enjoy the status of an invitee is embodied in the provisions of the *Restatement, Torts* § 332. The philosophy underlying this *Restatement* section has been termed the "economic benefit theory," which proceeds on the assumption that affirmative obligations are imposed on landowners only in return for some consideration or benefit. "Any obligation to discover latent dangerous conditions of the premises is regarded as an affirmative one, and the consideration for imposing it is sought in the economic advantage—actual or potential—of the plaintiff's visit to the occupier's own interest." 2 *Harper & James, Torts* § 27.12, *p.* 1478 (1956); see also, *Prosser, Torts* § 78, *p.* 454 (1955). This theory has been employed by our courts to determine the status of persons who come upon the land of another. See *Murphy v. Kelly*, 15 *N. J.* 608 (1954); *Fleckenstein v. Great Atl. & Pac. Tea Co.*, 91 *N. J. L.* 145 (*E. & A.* 1917); *Barnard v. Trenton-New Brunswick Theatres Co.*, 32 *N. J. Super.* 551 (*App. Div.* 1954). However, it is not now, nor has it ever been, the law in this State that the "economic benefit" test is the *exclusive* one for determining whether an implied invitation existed.

In *Phillips v. Library Co.*, 55 *N. J. L.* 307 (*E. & A.* 1893), the defendant had leased the second floor of its building to a

society, with the understanding that another society would use it one night each week. Under this arrangement, the society of which the plaintiff was a member used the meeting room for its weekly meetings, and the plaintiff, after attending a meeting, was injured when he fell into an unguarded excavation in the rear yard of the building. After an exhaustive review of cases both in this country and in England, the court held that a jury question was presented whether the plaintiff was an invitee, saying:

"[T]he liability of an owner or occupier for the condition of his premises arises where the plaintiff was induced to make use of the premises, in the course of which he sustained the injury sued for, by express invitation, or by invitation to be implied from acts and conduct of the defendants. The gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used." *Id.*, at *pp.* 314–315.

\* \* \*

"In this class of cases the words 'invite,' 'allure,' 'induce,' 'leads,' and words of like import are used to characterize the conduct of the owner or occupier of lands which shall impose this duty upon him." *Id.*, at *pp.* 312–313.

At no point in *Phillips* did the court inquire into the possible economic advantage to the defendant of the plaintiff's visit upon its premises.[2]

In *Gibeson v. Skidmore*, 99 *N. J. L.* 131 (*E. & A.* 1923), the plaintiff, a library employee of the tenant of the defendant's building, was injured when she fell through an open trap door which was situated on that part of the premises

---

[2] While noting that some courts insisted upon some "business," "interest," "benefit" or "advantage" on the part of the defendant, Dean Prosser observed that "parallel with such decisions were others still relying merely upon a public invitation," citing *Phillips*. Prosser, "Business Visitors and Invitees," 26 *Minn. L. Rev.* 573, 584 (1942).

reserved by the defendant. The plaintiff had stepped into the area of the trap door in order to hang her hat and coat on hooks which had been provided by the defendant for that purpose. After restating the rule, quoted above, from *Phillips v. Library Co.*, *supra*, the court said:

"[W]e think that the evidence that the defendant voluntarily placed the hooks there in the wall, for the purpose of having the helpers at the library hang their hats and coats thereon, tended to show acts and conduct from which an invitation might be implied. It tended to show that thereby the defendant led the plaintiff to believe that the hooks were intended to be used in the manner in which she used them and that such use was not only acquiesced in, but was in accordance with the intention or design for which the place was adapted and prepared or allowed to be used." *Id.*, at *p.* 134.

Again, the court made no mention of any possible economic benefit which the plaintiff's visit, as the employee of the tenant, might have conferred upon the defendant.

Other cases following the rule of *Phillips* are *MacDonough v. F. W. Woolworth Co.*, 91 *N. J. L.* 677 (*E. & A.* 1917); and *Feingold v. S. S. Kresge Co.*, 116 *N. J. L.* 146 (*E. & A.* 1935). As recently as 1959, in *Snyder v. I. Jay Realty Co.*, *supra*, we indicated that one basis upon which the licensee of a tenant is held to be the invitee of the landlord while upon the common passageways of the premises is that "the landlord has held out the common passageways of the premises as open and provided for the use of any one coming for all usual and customary visits to his tenants and to that extent has made such ways a public place." 30 *N. J.*, at *p.* 314. The above rule, which has been termed the "invitation test," does not deny that an implied invitation may be based on economic benefit to the land occupier, but it does not regard that as an essential element. As said in *Harper & James*, *supra*, at *p.* 1479:

"Rather it [the invitation test] bases 'invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and

that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. * * *' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety."

The invitation test is now accepted by the great majority of the courts, notwithstanding the position taken by the *Restatement of Torts*. *Prosser, Torts, supra,* at *p.* 456. In discussing this test, which he emphatically recommends, Dean Prosser said:

"What is required is something in the way of an appearance of offering to the public and inducement to enter, of preparation, or assurance that the premises are provided and intended for public use —that the public will not merely be tolerated, but is *welcome, encouraged* and *desired* to come." Prosser, "Business Visitors and Invitees," 26 *Minn. L. Rev.* 573, 586 (1942). (Emphasis added.)

Although an employee's visitor is generally considered a licensee, see *Fitzpatrick v. Cumberland Glass Mfg. Co.,* 61 *N. J. L.* 378 (*Sup. Ct.* 1898), where the employer has "so far *permitted and encouraged* the practice [of visits to employees for certain purposes] that it might reasonably be believed that the premises were open to any member of the public coming for such a purpose," then an invitation to such visitors might be implied. *Prosser, supra,* 26 *Minn. L. Rev.,* at *p.* 594, citing cases. (Emphasis added) It is not so much a lack of economic benefit to the occupier which deprives persons lawfully upon the premises of the status of invitee, but, "[i]t is rather the fact that the premises obviously are not provided for such a purpose; that the visitor is not *solicited or encouraged* to come for such an end; in short, that he *must understand* that his presence will be *suffered at most,* and that he is not invited to come." *Id.,* at *p.* 597 (Emphasis added) The status of a social guest at the home of his host was distinguished by Dean Prosser thus:

"The reason the courts have given is the simple one, that the guest understands when he comes that he is to be placed on the same footing

as one of the family, and must take the premises as the occupier himself uses them, without any preparations made for his safety; that he assumes the risk of defective conditions unknown to the occupier, and is entitled at most to a warning of dangers that are known." *Id.*, at *p.* 604.

See also, *Berger v. Shapiro, supra;* and *Cosgrave v. Malstrom,* 127 *N. J. L.* 505 (*Sup. Ct.* 1941).

In the present case, the jury could find that not only did the defendants know of the visits by the Senak salesmen to their employees, and acquiesced therein, but that such visits were induced and encouraged by the defendants, through the purchases of the defendant Cox and through the cooperation extended by Tillotsen in allowing the employees to take money from the cash register to pay for the weekly installments. The plaintiff presumably knew of the past experiences of his fellow Senak salesmen in coming to the diner for purposes of selling merchandise to and collecting from the employees and the defendant Cox himself, and the jury could find the plaintiff reasonably felt, on the basis of the defendants' conduct, that he would be welcome and that the premises had been made safe for his visit. Therefore, the jury could properly conclude that the plaintiff was an invitee at the time he first entered the defendants' premises.

Prior to the plaintiff's accident, all transactions between Senak salesmen and the defendant Cox or the employees had taken place in the front part of the diner across the counter. The defendants argue that even if the plaintiff entered the front of the premises by an implied invitation, such invitation did not extend to the rear doorway where the accident occurred. However, it is well-settled that an invitation "extends to all parts of the premises to which the purpose may reasonably be expected to take him [an invitee], and to those which are so arranged as to lead him reasonably to think they are open to him." *Prosser, Torts, supra,* at *p.* 458. See also, *Snyder v. I. Jay Realty Co., supra,* 30 *N. J.,* at *pp.* 314–315; *Gudnestad v. Seaboard Coal Dock Co.,* 15 *N. J.* 210, 219 (1954); *Williams v. Morristown Memorial Hosp.,*

59 *N. J. Super.* 384 (*App. Div.* 1960); *Waters v. Solitare,* 131 *N. J. L.* 212 (*E. & A.* 1944). In the present case, the jury could reasonably find that the plaintiff's implied invitation was for the purpose of selling merchandise to the defendants or their employees; that with this in mind, he went to the rear doorway, at Lawson's request, only for sufficient time to accomplish the above purpose. In so doing, the plaintiff avoided the interference and added congestion to the lunchtime crowd which would have resulted from an attempt to conduct the sales over the front counter. The rear entrance, in which the plaintiff could wait for a free moment of the employees, was provided by the defendants for merchandise deliveries and the use of tradesmen generally. There were no signs prohibiting the plaintiff's entrance therein. The jury could find that the plaintiff had reason to believe that he was included among those for whom the service entrance was provided, and that he could enter with an expectation of safety. Hence, the jury could conclude that in the circumstances it was reasonably to be expected that the purpose of the plaintiff's invitation would take him to that part of the premises where he fell.

The duty of care owed by an occupier of land to his invitee is to use reasonable care to make the premises safe, and this includes the duty to make a reasonable inspection to discover defective conditions. *Stark v. Great Atlantic &c. Tea Co.,* 102 *N. J. L.* 694 (*E. & A.* 1926); *Restatement, Torts* § 343. The jury could reasonably find that the defendants were negligent in permitting the blocking of the stairs by the coffee carton which, together with the shortness of the platform, created an unreasonable risk of harm to the plaintiff, and that such condition was the proximate cause of the plaintiff's injuries.

For the above reasons, we hold that a jury question was presented with respect to the defendants' breach of duty owed to the plaintiff both as a licensee and as an invitee. Although the trial court's judgment was reversed by the Appellate Division for reasons no longer material to the case, its opinion

on the merits is in error. The new trial, therefore, must be consistent with the views expressed above. On this basis, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For reversal*—None.