JOANNE BENEDICT AND RICHARD BENEDICT, HER HUS-
BAND, PLAINTIFFS-RESPONDENTS, v. THOMAS POD-
WATS AND JOYCE PODWATS, HIS WIFE, DEFENDANTS-
APPELLANTS.

Argued October 13, 1970—Decided December 7, 1970.

*Mr. Guy H. Haskins,* argued the cause for appellants;
*Messrs. Haskins, Robottom and Hack,* attorneys; *Mr.
Bartholomew A. Longo,* of counsel and on the brief.

*Mr. Karl R. Meyertons,* argued the cause for respondents.

PER CURIAM. The judgment is affirmed for the reasons
expressed in the opinion of Judge Kilkenny filed in the Ap-
pellate Division, 109 *N. J. Super.* 402.

HALL, J. (dissenting).
This case concerns the basis of liability of possessors of
land to a relative who is requested to come to their home
to perform some household chores and is injured by reason
of a condition on the premises. Since the fundamental facts
are undisputed, I agree this basic question is one of law for
the court. My disagreement with the majority stems from
the adopted conclusion of the Appellate Division that the
trial judge was correct in holding, upon denial of defend-
ants' motion for judgment at the close of the case and in
his charge to the jury, that the injured plaintiff was an "in-
vitee," thus requiring the property owner to exercise reason-
able care to have the premises in a safe condition. In my
view, she was, as defendants contended on their motion,
only a "licensee" and barred from recovery by reason of her
full knowledge of the condition.

The pertinent facts, which include some not mentioned in the opinion of the Appellate Division, may be quickly summarized.

Mrs. Benedict, the injured plaintiff, is a sister of defendant Mrs. Podwats, a co-owner of the Podwats home. They lived quite close together and Mrs. Benedict had visited her sister at least once a week since the Podwatses had purchased the house about two years before. On the day in question Mrs. Podwats, who worked during the day, had asked her to come over to arrange some flowers in preparation for a meeting she was to have after work and to "do anything I'd see to be done." The latter turned out to include hanging out some laundry to dry on a line in the backyard. There was, of course, no expectation of remuneration for the services.

The back door of the house opened on a cement patio with a brick border, constructed by a prior owner. Both the cement and the bricks had a painted surface, which the Podwatses had applied. At the far end three steps led downward to a concrete sidewalk and the backyard. At this point the brick border was not entirely level with the cement, sloping downward away from the patio about an inch. The steps had no handrail and the expert testimony was that the painted surface was smooth and more slippery over the bricks than over the patio. This situation constituted the dangerous condition asserted. The injury occurred in the early afternoon when Mrs. Benedict was on her way to the backyard to retrieve some of the laundry from the line because of the possibility of a shower. As she reached the brick border preparing to descend the steps, her feet went out from under her and into the air; she landed on her low back on the steps and bounced down to the sidewalk. She had nothing in her arms at the time, her vision was not obstructed and she was looking where she was going.

Not adverted to by the Appellate Division is the fact that the use of the back door, the patio and the steps was not merely a way to reach the backyard, with which Mrs. Bene-

dict was not familiar. Rather, as she testified, it was the main and only route used by everyone to enter the house; she used it to enter every time she came to visit. The front door was not utilized and was kept locked. She was thoroughly acquainted with the downward tilt of the bricks since her relatives had acquired the property. A child had previously slipped at this spot. Indeed, she said the patio had been discussed between the two families, which, as the trial judge commented in his charge, led him to the inference that the condition had been talked about.

The law of this state is clear: the action that a possessor of land must take or from which he must refrain or respond in dollars for injuries suffered by persons upon his property by reason of a dangerous condition thereof, depends upon the status of the injured person, *i. e.* the circumstance of his entry. As was said in *Snyder v. I. Jay Realty Co,.* 30 *N. J.* 303, 311–312 (1959):

> In this state we have consistently adhered to the historically based view of the common law that the duty owed by an occupier of land to third persons coming thereon is determined according to the status of such third person, *i. e.*, invitee, licensee or trespasser. Indeed, the ascertainment of that status is an essential preliminary to the application of the particular standard of care to be exercised by the land occupier * * *. These common law classifications are sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present day society. * * * We believe that adherence to the traditional classifications is desirable in that it lends a reasonable degree of predictability to this area of the law. These classifications also aid in the proper distribution of trial functions between judge and jury, wherein the latter determines only disputed questions of fact.

Questions of who falls in which class and the affirmative or negative duties which may reasonably and justly be expected of land possessors as to each are essentially matters of policy for judicial determination. While distinctions may be shadowy and the lines fine in some instances, we have in late years generally followed the definitions and differentiations set forth in Restatement of the Law, Torts, as being

sound, sensible and reasonably easy of application.[1] See *Pearlstein v. Leeds*, 52 *N. J. Super.* 450 (App. Div. 1958), *certif. denied* 29 *N. J.* 354 (1959); *Berger v. Shapiro*, 30 *N. J.* 89 (1959); *Snyder v. I. Jay Realty Co., supra* (30 *N. J.* 303). *Cf. Handleman v. Cox*, 39 *N. J.* 95 (1963). We therefore ought to look to Restatement, Torts 2d (1965), which in some ways refined and clarified the principles laid down in the original Restatement and utilized in the cited cases, for the proper classification of plaintiffs' status and defendants' duty.

As to classification, Restatement, Torts 2d, now defines a licensee as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Section 330. Section 332, defining invitee, reads as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Comment as to section 332, new in Torts 2d, explains the limited nature of the invitee class:

---

[1]At least one state has recently discarded the status classification and established instead a uniform test based on whether the land possessor acted as a reasonable man in view of the probability of injury to others. *Rowland v. Christian*, 69 *Cal.* 2d 108, 70 *Cal. Rptr.* 97, 443 *P.* 2d 561 (1968). See also *Anno.* 32 *A. L. R.* 3d 508 (1970). One element bearing on the question of liability, however, is stated to be the status of the injured party. Even apart from the matter of the wisdom of doing away with classifications, the question arises as to how this element could be explained in meaningful terms to a jury without practically returning to the status concept.

A thread running through the *Rowland* opinion as a reason for the adoption of such a broad rule is the increasing prevalence of liability insurance. Indeed, suits against relatives will not be commenced unless there is such insurance. This is the case here, as plaintiffs' counsel candidly admitted at oral argument. The insurance carrier becomes the real defendant.

a. *Invitee.* "Invitee" is a word of art, with a special meaning in the law. This meaning is more limited than that of "invitation" in the popular sense, and not all of those who are invited to enter upon land are invitees. A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. (See § 330, Comment h.) Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception. Such persons fall generally into two classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor. The second class are sometimes called business visitors; and a business visitor is merely one kind of invitee. There are many visitors, such as customers in shops, who may be placed in either class.

The effect is that those who cannot qualify under the invitee definition are to be treated as licensees.

As the quoted comment indicates, a household social guest, even if he be a non-relative and specifically invited and urged to visit, is to be classified as a licensee and not as an invitee. New Jersey has always followed this classification, *Berger v. Shapiro, supra* (30 *N. J.* 89), even when the guest performs some incidental household tasks. *Pearlstein v. Leeds, supra* (52 *N. J. Super.* 450). The reason is "that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family." Restatement, Torts 2d, § 330, comment h 3.

In view of the word-of-art definition of invitee and the express limitations of that classification, as well as the common sense of the situation, I find it impossible soundly to conceive of Mrs. Benedict as an invitee in this legal sense when she went to her sister's home, even by request, only to perform some gratuitous household chores. It seems to me she can be said to be legally nothing more than a social

guest and in the category of a licensee. Although this particular factual pattern has not previously been before our courts, the approach I suggest as the proper one really formed the rationale in *Cosgrave v. Malstrom*, 127 *N. J. L.* 505 (Sup. Ct. 1941). There the defendant invited her next door neighbor to come over to give advice as to a household purchase; the court held (without reference to the Restatement) that she was only a licensee despite the express invitation and the benefit to the defendant. The trial court in the instant case I believe went wrong in considering "invitee" in the lay rather than the legal sense. The view taken leads to the rather silly result of a distinction as to basis of liability between the factual situation here and that which would exist if Mrs. Benedict had instead been invited to her sister's home for lunch and fell at the same spot.

While courts elsewhere are divided with respect to the situation of a chore-performing relative, the sounder decisions take the view I have espoused. *See, e. g., Pandiscio v. Bowen*, 342 *Mass.* 435, 173 *N. E.* 2d 634 (1961); *Spring v. Burke*, 346 *Mass.* 773, 194 *N. E.* 2d 626, 627 (1963); *O'Brien v. Myers*, 354 *Mass.* 131, 235 *N. E.* 2d 780 (1968); *Jenkins v. R. T. Brothers*, 3 *N. C. App.* 303, 164 *S. E.* 2d 504 (Ct. of App. 1968); *Mitchell v. Legarsky*, 95 *N. H.* 214, 60 *A.* 2d 136 (1948); *Porter v. Ferguson*, 53 *Wash.* 2d 693, 336 *P.* 2d 133 (1959); *Lucas v. Barner*, 56 *Wash.* 2d 136, 351 *P.* 2d 492 (1960). As the Massachusetts court said in *O'Brien*: "Such benefit as plaintiff was bestowing on her sister was that of 'a member of a family * * * rendering friendly help in household routine' and was not 'of the character * * * to make it clearly the dominant aspect of the relationship.'" 235 *N. E.* 2d at 781. *Contra, Campbell v. Eubanks*, 107 *Ga. App.* 527, 130 *S. E.* 2d 832 (Ct. App. 1963); *Cozine v. Shuff*, 378 *S. W.* 2d 635 (Ky. Ct. App. 1964); *Schlicht v. Thesing*, 25 *Wisc.* 2d 436, 130 *N. W.* 2d 763 (1964).

As to duty, that owed a licensee with respect to a condition on the land is spelled out in the following sections of Restatement, Torts 2d:

## SPECIAL LIABILITY OF POSSESSORS OF LAND TO LICENSEES

§ 342.  Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

The knowledge of the injured party goes to the absence of a necessary element of the possessor's duty rather than to an affirmative defense of contributory negligence.  See *Pearlstein v. Leeds, supra* (52 *N. J. Super.* at 456).

Since Mrs. Benedict had clear knowledge of the condition and the risk involved, plaintiffs should be barred from recovery as matter of law.

I may also add that, although defendants did not raise the matter at trial or on appeal and so I do not consider it a ground for reversal, in my opinion there was a jury question concerning the effect of Mrs. Benedict's knowledge on her right to recover as an invitee as to which the trial court gave no instruction.

The Restatement 2d provisions as to the duty owed an invitee are as follows:

## SPECIAL LIABILITY OF POSSESSORS OF LAND TO INVITEES

§ 343.  Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

## § 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

In view of section 343 A(1), it seems to me that, where the danger of a condition on the land is known to an injured plaintiff, the jury should be instructed that the possessor is not liable unless the jury finds that he should have anticipated the harm despite such knowledge.

I am convinced the trial court was in error in denying defendants' motion for judgment and I would reverse the Appellate Division and direct the entry of such a judgment.

Justice HANEMAN joins in this opinion.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—Justices HALL and HANEMAN—2.