806 F.2d 488
 Elaine HALLACKER, individually and as Administratrix and
Administratrix ad Prosequendum of the Estate of
Albert Joseph Hallacker, Jr., Deceased, Appellant,
v.
NATIONAL BANK & TRUST CO. OF GLOUCESTER COUNTY,
Defendant/Third-Party Plaintiff Appellee,
v.
Edmund and Dolores RUDD, j/s/a, Third Party Defendants.
 No. 86-5268.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 18, 1986.
Decided Dec. 4, 1986.
 
 Michael A. Ferrara, Jr. (argued), Ferrara and Waldman, P.A., Cherry Hill, N.J., for appellant.
 Robert L. Grundlock, Jr. (argued), William F. Keating, LaBrum and Doak, Woodbury, N.J., for defendant/third-party plaintiff appellee.
 Before SEITZ, GIBBONS, and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This diversity action requires us to construe N.J.Stat.Ann. Sec. 2A:42A-2 et seq. (West Supp.1986), the Landowners' Liability Act ("LLA"), which limits the tort liability of landowners under certain conditions. Plaintiff-appellant Elaine Hallacker brought a wrongful death action against defendant-appellee National Bank & Trust Co. of Gloucester County ("Bank") after her husband, Albert Hallacker, died as a result of injuries sustained on the defendant's property. The Bank filed a motion for summary judgment on Hallacker's complaint, arguing that the Bank was immune from liability under the LLA. The Bank's motion was granted by the district court, and this appeal followed.
 
 
 2
 On June 30, 1982, decedent Albert Hallacker, appellant Elaine Hallacker, and their infant son visited a vacation cottage at Wilson Lake Memorial Park ("Park"), located in Clayton, New Jersey. The Hallackers were invited to the Park by their friends Edward Hickey and Diane Winning, who had received permission to use the cottage from the Rudds, who in turn leased the cottage from the Bank. The Hallackers arrived at the cottage at about 11:00 a.m. After approximately two and one half hours of unpacking, picknicking, and card-playing, Albert Hallacker decided to take a swim in the lake. He walked to the end of a short boat dock and dove head-first into the water, striking his head on the bottom of the lake and shattering a cervical vertebra. The water was only two and one half feet deep. Two weeks later, Albert Hallacker died as a result of this injury.
 
 
 3
 Appellee Bank was appointed trustee of Wilson Lake Memorial Park by the last will and testament of the Park's former owner, George H. Wilson. The Park consists of approximately 840 acres. Within an area of 140 acres, the Park contains 76 rental cottages, 107 campsites, 9 docks, and a recreational lake. The Park has only one paved road. The cottages and campsites are primarily rented out on a seasonal basis, although a handful of retired persons live at the Park year-round. Under the terms of the lease agreement, no subletting or loaning of the rental property by the lessee is permitted. Under the rules and regulations of the Park, which are incorporated by reference into the lease agreement, swimming is only permitted in a specified area of the lake. The spot at which Albert Hallacker suffered his fatal injury was not within this specified area. There were no signs warning "No Swimming" or "No Diving" at the place where Hallacker's accident occurred.
 
 
 4
 The Landowner's Liability Act, N.J. Stat.Ann. Sec. 2A:42A-2 et seq., provides in pertinent part as follows:
 
 
 5
 As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.
 
 
 6
 Except as provided in section 3 of this act:
 
 
 7
 a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes;
 
 
 8
 b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.
 
 
 9
 This act shall not limit liability which would otherwise exist:
 
 
 10
 a. For willful or malicious failure to guard, or warn against, a dangerous condition, use, structure or activity; or
 
 
 11
 b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State....
 
 
 12
 Assuming without deciding that Wilson Lake Memorial Park is the kind of "premises" that comes within the purview of the LLA, we will confine our discussion in this case to whether or not the language of the Act precluding immunity where "permission to engage in sport or recreational activity on the premises was granted for a consideration," N.J.Stat.Ann. Sec. 2A:42A-4(b), is applicable here. Through a careful review of the rules of statutory construction, the policies underlying the enactment of the statute, and the plain language of the statute, we conclude that, as applied to the facts of this case, the consideration clause deprives the Park of any immunity it might otherwise have under the LLA.
 
 
 13
 Prior to the enactment of the LLA in New Jersey, the common law liability of a landowner towards a third party injured upon his premises was determined by the status of the third party, i.e., whether he was a trespasser, a licensee, or an invitee. See Handleman v. Cox, 39 N.J. 95, 102, 187 A.2d 708, 711 (1962). The LLA abrogated the status-based distinctions of the common law where land is used for recreational purposes. Since the LLA is in derogation of the common law, it must be strictly construed. Krevics v. Ayars, 141 N.J.Super. 511, 516, 358 A.2d 844, 846-47 (Law Div.1976). Strict construction is especially appropriate when examining a statute like the LLA, which confers immunity upon a particular class of potential tortfeasors. See Harrison v. Middlesex Water Co., 80 N.J. 391, 401, 403 A.2d 910, 914 (1979). As the New Jersey Supreme Court noted in construing the LLA, "[w]e must assume that the Legislature is mindful that immunity from liability for the negligent infliction of injury upon others is not favored in the law. It leaves unredressed injury and loss resulting from wrongful conduct." Id. Strict construction in this case requires broad construction of the consideration clause. See Copeland v. Larson, 46 Wis.2d 337, 346, 174 N.W.2d 745, (1970).
 
 
 14
 The common law definitions of trespasser, licensee, and invitee, and the duties owed to them by landowners, are clear under New Jersey law. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts Sec. 329 (1965). Generally, a landowner has no duty of care towards a trespasser, except to refrain from wilfully injurious acts. Renz v. Penn Central Corp., 87 N.J. 437, 435 A.2d 540 (1981). A licensee is allowed upon the land by virtue of landowner's consent; he is not invited onto the premises, rather, his presence is "suffered" by the landowner. Snyder v. I. Jay Realty Co., 30 N.J. 303, 312, 153 A.2d 1, 5-6 (1959). With respect to the licensee, the landowner is required neither to inspect his land in order to discover defects, nor to maintain the premises in a safe condition. If the landowner knows of a dangerous condition, however, and believes that his licensee is unlikely to discover it on his own, he is under an obligation either to make the condition reasonably safe or to warn his licensee of the danger. Handleman v. Cox, 39 N.J. at 103, 187 A.2d at 712. Finally, an invitee is a party explicitly invited onto the landowner's premises, to whom the landowner owes a duty of reasonable care, and for whom he must provide "a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Markets, 89 N.J. 270, 275, 445 A.2d 1141, 1143 (1982). Within this class of persons are "business invitees," those invited onto the premises by the landowner for the purpose of conducting business, or whose presence on the land is a direct or indirect source of profit to the landowner. Id. The social guest of a lessee of a landowner is the business invitee of the landowner, although he is merely a licensee of the tenant. See Van Der Woude v. Gatty, 107 N.J. Super. 164, 257 A.2d 720 (App.Div.1969).
 
 
 15
 The LLA alters the common law duty of landowners by treating all persons who go onto the land of others for recreational purposes as "trespassers": the landowner is liable only for malicious and wilful acts committed against such persons. See N.J.Stat.Ann. Sec. 2A:42A-4(a). However, the legislature carved out an "invitee-like" exception to LLA immunity, by withholding the immunity landowners would otherwise enjoy where they have received consideration for the recreational use of their facilities. Diodato v. Camden County Park Commission, 162 N.J.Super. 275, 284, 392 A.2d 665, 669 (Law Div.1978). Strictly construed, the LLA does not alter but preserves the duties set by the common law where a business invitee is harmed on the recreational lands of another.
 
 
 16
 The removal of LLA immunity where any consideration is paid to the landowner is consistent with the policies underlying the statute. As the New Jersey Supreme Court noted:
 
 
 17
 The public policy to afford these property owners a modicum of protection from tort liability may be thought of as one which would encourage such owners to keep their lands in a natural, open and environmentally wholesome state. This is an important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State. It is a concern well known to the Legislature and the preservation of such lands is very much an integral part of our governmental and public policy. This purpose was assuredly intended to be served by the Legislature in structuring the current Landowner's Liability Act.
 
 
 18
 Harrison, 80 N.J. at 400, 403 A.2d at 914 (citations omitted). Thus, tort immunity is a special incentive given to landowners to encourage them to open their lands to the public for recreational use. A landowner making his property available to the public for a price already has an economic incentive. Immunity is a necessary incentive only in the absence of economic self-interest. The Court of Appeals for the Ninth Circuit relied upon this analysis in holding that even an indirect payment of consideration bars immunity under California law.
 
 
 19
 Since the potential for profit alone is thought sufficient to encourage those owners who wish to make commercial use of their recreational lands to open them to the public, the further stimulus of tort immunity is both unnecessary and improper. Furthermore, where a landowner derives an economic benefit from allowing others to use his land for recreational purposes, the landowner is in a position to post warnings, supervise activities, and otherwise seek to prevent injuries.
 
 
 20
 Ducey v. United States, 713 F.2d 504, 511 (9th Cir.1983).
 
 
 21
 The fact that Hallacker himself did not pay any kind of consideration cannot prevent the consideration clause from barring immunity in this case. If consideration deprives the defendant of immunity only where the plaintiff himself pays it, then the consideration is essentially a payment for permission to sue. If consideration instead acts as an incentive to the landowner to keep his lands in a natural state, then the receipt of consideration should be enough to bar immunity no matter who pays it. The plain language of the LLA bars immunity "where permission ... was granted for a consideration...." N.J.Stat.Ann. Sec. 2A:42A-4(b) (emphasis added). The statute does not specify by whom the consideration must be paid, but only that it be paid to the landowner. The use of the passive voice in the New Jersey statute indicates that the operation of the clause does not constitute a purchase by the plaintiff of a duty of care, but a special entitlement of immunity to those landowners who provide their lands to the public for free use. Cf. Smith v. United States, 383 F.Supp. 1076, 1080 (D.Wyo.1974) (non-paying plaintiff cannot invoke consideration bar to immunity where statute limits immunity "For injury suffered ... where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof....").
 
 
 22
 The district court held that the payment of consideration did not defeat the statutory immunity in this case because the Bank did not grant anyone permission to swim in the lake. The only New Jersey state court decision dealing with the consideration clause of the LLA, Diodato v. Camden County Park Commission, might seem to imply that consideration must be paid in exchange for permission to engage in the specific activity in which the plaintiff suffers damage in order for the payment of consideration to bar immunity. In Diodato, the plaintiff sued Cooper River Park for injuries he sustained when he dove into the Cooper River and struck a partially submerged oil drum. The plaintiff invoked the consideration exception to LLA immunity because his employer had paid a fee for the use by his employees (including Diodato) of one of the park's baseball fields. The Diodato court correctly held the consideration clause inapplicable to these facts: the consideration was paid only for permission to use the baseball field; access to the rest of the park (including the river, where the accident took place) was provided free of charge. See Diodato, 162 N.J.Super. at 284-85, 392 A.2d at 670.
 
 
 23
 The Diodato facts are clearly distinguishable from the facts now before us. In the present case, it is not clear whether payment was necessary only for the use of cabins or campsites, or whether it was also necessary for access to the Park as a whole. In either case, the consideration clause bars immunity notwithstanding Diodato. If the lessees are the only persons permitted to use the Park's grounds for recreational purposes, then their payment of consideration is made in exchange for general permission to recreate throughout the Park, and so the consideration exception clearly applies. If the Park is open to all transient visitors, and the consideration is paid in exchange for the use of the cabin only, the consideration bar also applies, because the use of the dock and water in the vicinity of the cabin is an implied benefit of the cabin rental. Cf. Graves v. United States Coast Guard, 692 F.2d 71, 73 (9th Cir.1982) (applying a California statute identical to the LLA, the court held that "the use of the [riverside] cabana and access to the river were implied benefits received as a consequence of the payment of consideration" for permission to use campgrounds).
 
 
 24
 The district court held that the consideration clause could not bar immunity here because the Park's Rules and Regulations, as incorporated in the lease agreement, specifically instructed all lessees not to use the part of the lake in which Hallacker was injured. Although superficially appealing, this argument misses the mark. Our concern here is the determination of the Bank's duty under the LLA. Any warnings or prohibitions included in the Rules and Regulations or the lease agreement are relevant to the determination of whether the landowner adequately performed his duty to warn of a dangerous condition. The provisions in the Rules and Regulations cannot be relied upon to determine whether or not a duty of care exists. If the payment of consideration in this case gives rise to a duty of care owing to a "business invitee," it is for the jury to decide whether the prohibition at issue here adequately discharged that duty.
 
 
 25
 Since the LLA does not apply in this case, the liability of the landowner must be determined under the common law. The status of the decedent must be determined by the district court after receipt of further factual information. If the decedent was a business invitee of the defendant, he was owed a normal duty of care. If the decedent was a licensee of the defendant, the defendant was required to inform him of known hazards. Whether the defendant adequately performed its duty under either of these standards cannot be determined by us on the record before us. Furthermore, it is not for us to determine whether or not Hallacker was contributorily negligent.
 
 
 26
 We will reverse and remand to the district court.