194 N.J. Super. 185 (1984)
476 A.2d 809
MARY DAGGETT AND ROBERT DAGGETT, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
JOHN DI TRANI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1983.
Decided June 13, 1984.
*187 Before Judges FRITZ, FURMAN and DEIGHAN.
Critchley & Roche, attorneys for appellants (J. Patrick Roche, on the brief).
Hoagland, Longo, Oropollo & Moran, attorneys for respondent (Michael John Stone, on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The appealing personal injury plaintiff (hereafter referred to as plaintiff; her husband sues per quod) went, with her son, to defendant's home to pay defendant's wife for dinner tickets in connection with a fashion show sponsored by a women's club of which defendant's wife was a member. Plaintiff was not a member of the women's club. At the door, defendant's wife invited plaintiff in "for a cup of coffee." This amenity concluded, plaintiff left and in walking down the driveway slipped, fell and injured herself.
The trial judge found that
... the purpose for which the plaintiff was on the premises, and the purpose in which the defendant's wife was interested was purely a social one related to a dinner and fashion show being given by a social club. Although, apparently they had not visited before this event itself became social, rather than just taking payment of the tickets, Mrs. DiTriani [sic] invited the plaintiff in for *188 coffee and they socialized. The child came in with her. They left. So, that the whole atmosphere of this is one of a social relationship, without any suggestion of a reasonable expectation particular preparations or measures would be taken for the benefit of the plaintiff that were not taken for the family itself.
Concluding that plaintiff was a social guest to whom defendant owed only a duty to disclose known but unapparent hazards and finding that the circumstances did not demonstrate a breach of that duty, he granted defendant's motion to dismiss the complaint. Our judgment does not accord with his and we reverse.
Plaintiff charges first that the rule in New Jersey proclaiming that it is the status of the plaintiff which is determinative of the duty of care owed to a plaintiff by a defendant is anachronistic and should be changed. She cites substantial authority from foreign jurisdictions for this position. The difficulty with the argument is that the rule in New Jersey is one to which our Supreme Court has "consistently adhered," considering the ascertainment of that status "an essential preliminary to the application of the particular standard of care to be exercised by the land occupier." Snyder v. I. Jay Realty Co., 30 N.J. 303, 311 (1959). We may not, of course, depart from a rule established in our court of last resort. In re Education Ass'n of Passaic, Inc., 117 N.J. Super. 255, 261 (App.Div. 1971), certif. den. 60 N.J. 198 (1972). Di Cosala v. Kay, 91 N.J. 159 (1982) may forecast an abrogation of the rule but we note that Justice Handler, in writing for a unanimous Court in Di Cosala, depended on Renz v. Penn Central Corp., 87 N.J. 437 (1981) and Eden v. Conrail, 87 N.J. 467 (1981) as support there for his statement:
... [W]e note that, contrary to the conclusion reached by the courts below, the lack of a duty predicated upon the legal status of the infant plaintiff, or otherwise arising out of an independent legal relationship between the parties, is not determinative. Thus, we have recently observed that the existence of a duty to exercise reasonable care need not be determined solely by the status or legal relationship between the parties, even if otherwise relevant. That determination should be made by taking into account all of the surrounding circumstances. [91 N.J. at 176.]
But the concurrence of Justice Schreiber in Renz points up the significance of the fact that Eden and Renz were involved with *189 a statute respecting the duty of a railroad to persons on the railroad property. He observed:
The statute is directed to conduct, not status. It must be borne in mind that under our decisional law a plaintiff's status is a factor in determining the duty owed by a property owner. Status is inextricably intertwined with the scope of the duty owed by the property owner. Only after that duty is defined and a breach ascertained is attention directed to the plaintiff's conduct. The structure of the statute, though, addresses the plaintiff's conduct irrespective of his status. [87 N.J. at 465.]
In Renz, Snyder receives only bare mention in string citations as an example of "accommodation of negligence principles" to the "evolution of the common law of trepass." 87 N.J. at 461, 435 A.2d 540. It is unmentioned in Eden. Accordingly, Snyder represents controlling law in nonstatute cases and we may not depart from it. We turn to a consideration of the status of plaintiff upon the property.
It appears implicit from the oral opinion of the trial judge that he believed that the invitation to plaintiff at the door to come in for a cup of coffee altered the status of plaintiff upon the premises from that with which she was originally clothed to one of social guest. We cannot understand why a defendant should be afforded an opportunity unilaterally to diminish the duty of care owed to a visitor to the premises at a time when a plaintiff has already commenced an undertaking of any risks which inhere. We would not permit the duty of care to be increased in Pearlstein v. Leeds, 52 N.J. Super. 450 (App.Div. 1958), certif. den. 29 N.J. 354 (1959), even though there the plaintiff social guest undertook to perform services beneficial to the host in the course of the visit. Consistently with that we here believe that status is determined by the circumstances which bring the plaintiff to the property. Conceivably other circumstances could, in some cases, alter that status, but certainly not the kind offer of a social guest to help with preparations, as in Pearlstein, or the hospitable invitation to an invitee to come in for a cup of coffee, as here.
We are satisfied that the events which brought plaintiff to defendant's home created an invitee status. An invitee, *190 in the legal sense, is "one who is on the premises to confer some benefits upon the invitor other than purely social." Berger v. Shapiro, 30 N.J. 89, 96 (1959). Here plaintiff went to the home of defendant's wife, whom she had never before visited, for the sole purpose of paying for tickets to an affair being given by a women's club of which defendant's wife was a member. Although the affair may properly be characterized as a social one, that fact does not make plaintiff's trip to defendant's home to pay for tickets to it a social endeavor. Plaintiff, a nonmember of the club, went there to confer a benefit on the club and upon defendant's wife, a member of that club.
That the matter must be remanded for trial suggests further comment respecting the duty owed to an invitee such as plaintiff here. In this connection, we observe at the outset that the fact Mrs. Daggett was an invitee on the DiTrani premises does not assure a judgment for Mrs. Daggett. It would appear that prior to the accident, plaintiff "mentioned to [her] son that the driveway was slippery so he shouldn't run down it." This is significant not only from a standpoint of comparative negligence but in the event defendant had a duty to warn, then as to the question of whether the failure to warn constituted an inculpatory proximate cause of the injury.
With respect to the duty to warn, we observe that Pearlstein v. Leeds, supra, said, in a dictum in that case concerning a visitor to residential premises, that even were plaintiff to be considered an invitee rather than a social guest
... the duty owed to such a person under our present law is generally equivalent to that set forth in the Restatement. It is not simply a broad general standard of reasonable care under the circumstances. The only additional obligation owed over that to a licensee, with respect to dangerous conditions on or of the premises, is to exercise reasonable care to discover them. Restatement, sec. 343. Beyond that the duty is the same, i.e., to exercise reasonable care to make the condition reasonably safe or to give a warning adequate to enable avoidance of the harm. The obligation ordinarily does not exist where the invitee knows of the condition and realizes the risk. Similarly, there is generally no liability for harm caused by failure to carry on activities with reasonable care for the safety of invitees if the latter know of the activities and the risk involved. Restatement, sec. 341. It is recognized that *191 there are exceptional cases, despite the exclusionary language of the Restatement, where only a warning to an invitee of a dangerous condition may not be a sufficient discharge of duty or realization of the risk will not preclude liability, as in the case of icy steps or an otherwise dangerous surface which of necessity has to be traversed as the only reasonable means of essential passage. Prosser, op. cit., pp. 459-460; Harper and James, op. cit., sec. 27.13; 12 Rutgers L.Rev. 599, at 614; Williamson v. Derry Electric Co., 89 N.H. 216, 196 A. 265 (Sup.Ct. 1938). [52 N.J. Super. at 459.]
The disjunctive description of the duty there, emphasized in the opinion, offering the giving of a warning adequate to enable avoidance of the harm as an alternative to the exercise of reasonable care to make the condition reasonably safe, is not mentioned in Berger v. Shapiro, supra, a case involving a visit to residential premises. This omission is all the more significant since that case does recognize the law of Pearlstein v. Leeds insofar as the latter case held that a host is not liable if a guest is aware of the dangerous condition or by a reasonable use of his faculties would observe it. However, in Berger the concern was for the duty owed to a social guest. Justice Hall, who dissented in Berger and who authored Pearlstein v. Leeds, did not refer to the disjunctive theory of Pearlstein in his brief dissent in Berger. Handleman v. Cox, 39 N.J. 95 (1963), which followed Berger by four years, while dealing with commercial premises, defined the duty of care owed by an occupier of land to his invitee without discriminating between a commercial invitee and an invitee (as contrasted with a social guest or licensee) on residential premises. It held this duty was one "to use reasonable care to make the premises safe, and this includes the duty to make a reasonable inspection to discover defective conditions." (At 111; emphasis supplied.) More recently we have been assured that, "[t]he proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Markets, Inc., 89 N.J. 270, 275 (1982). Butler goes on to emphasize foreseeability as the predominant component around which the duty of care is built.
*192 Sorting out these not always concordant authorities, we are satisfied that with respect to the circumstances under which plaintiff wife found herself on defendant's premises, the duty of care owed by defendant was that articulated in Handleman v. Cox, supra, i.e., to use reasonable care to make the premises safe, including the duty to make a reasonable inspection to discover defective conditions. We would caution that reasonable care to make the premises safe does not impose strict liability in the event a defective condition is not corrected. Reasonableness necessarily implies consideration of all the surrounding circumstances, including but not limited to time constraints.
We reverse and remand for trial.