211 N.J. Super. 413 (1986)
511 A.2d 1247
TONY RUSSELL, PLAINTIFF-RESPONDENT,
v.
MERCK & COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1986.
Decided July 2, 1986.
*414 Before Judges MICHELS, GAULKIN and STERN.
Charles F. Waskevich, Jr. argued the cause on behalf of appellant (Apruzzese, McDermott, Mastro & Murphy, attorneys).
Stuart S. Ball argued the cause on behalf of respondent (Ball, Kiernan, Livingston & Smith, attorneys).
The opinion of the court was delivered by STERN, J.S.C., temporarily assigned.
Defendant appeals from a judgment in favor of plaintiff for injuries plaintiff sustained when playing softball on a field owned and maintained by defendant, his employer.
Defendant challenges the determinations of the trial court that it owed plaintiff the duty of care applicable to an invitee as opposed to a licensee and claims that, in any event, plaintiff's status was a question for the jury to resolve in the absence of judgment in defendant's favor as a matter of law. Defendant also argues that the verdict was against the weight of the *415 evidence and that the court erred in permitting plaintiff's expert witness to testify from his report.
Following trial, the jury found plaintiff and defendant each 50% negligent and assessed plaintiff's damages at $80,000. Judgment was entered for plaintiff in the amount of $40,000, plus interest and costs.
In early May 1982 plaintiff, an employee of defendant, was approached by another employee, Bobby Zullo, the captain of the Dynasty softball team, who suggested that he try out for the team. Zullo had also solicited new members for the team by placing an ad in the Daily Reporter, a company newspaper published by defendant. The Dynasty team was one of 12 intramural teams in a softball league composed of and run by defendant's employees. The team members chose team captains who in turn selected a league coordinator. The coordinator scheduled the teams for use of the two fields which were owned by defendant and located adjacent to its buildings in Rahway. The games were played after work and defendant provided the equipment in addition to the field.
On May 4, 1982, plaintiff was on defendant's Grand Avenue field for the first time to try out for the Dynasty team. He was fielding balls in right field when, according to plaintiff, he hit a "big rock, among other things," fell, and "twisted my knee and everything up." According to plaintiff "the field had big rocks in it. It had tree stumps" and "the ground was all unlevel" with small rocks and stones thereon. Plaintiff further testified that he tripped over a rock "as large as a football," and that he had not previously noticed it.
Robert Gregory, employed as defendant's grounds supervisor, testified that his responsibilities included maintenance of the softball fields, including the Grand Avenue field where the accident occurred. He explained that in April 1982 his crew put down clay in the appropriate areas of the Grand Avenue field and that the field was enclosed by a fence which had existed before the area was made into a ball field. There were signs on *416 the fence which read: "No Trespassing, Private Property, Merck & Company".
According to Gregory, the company had received complaints about the trees in right field. Although the trees were located beyond the playing areas, the employees had wanted the entire field open so more employees could practice on it at one time. In 1981 Merck hired a company to remove trees from that area. Gregory claimed that the stumps were removed at that time, and were placed "two to three feet into the ground."
Gregory's crew cut the grass on the Grand Avenue field on April 30 and again on May 4, 1982, the day the fields were opened for use. On May 4 the crew used a vacuum mower, which not only cuts grass but also picks up paper, small stones and twigs. The mower cut at a level of two and one-half inches above the ground.
Gregory maintained that he inspected the entire Grand Avenue field on May 4, 1982 and part of the regular duties of his crew was to police the ball field and to look for hazards.
Louis McQueen, a member of the grounds crew employed by defendant, played softball on another of defendant's teams. He testified that the Grand Avenue field was fairly well maintained but that the condition of the field, and particularly the right field area, was "very poor."
Anthony Houck, a research chemist employed by defendant, was in right field when plaintiff fell. He testified that he inspected the field before the practice and warned plaintiff to be careful because the field was "spongy". Houck did not see any rocks on the field and thought that the field was maintained in good condition. He saw that plaintiff's "right foot went out from underneath him and he went to the ground" while chasing a ball in the right field area.
Houck also testified that he personally encouraged employee participation in the softball league because participation by employees was "good for morale" which in turn was good for productivity.
*417 Defendant contends that both on plaintiff's pretrial motion and when instructing the jury, the court below erred in determining as a matter of law that defendant owed plaintiff the duty of care applicable to an invitee. In instructing the jury at the end of the case the trial judge stated, in part:
Mr. Russell, was an invitee and I'm going to give you what the definition of an invitee and the duty that's owed to an invitee.
An invitee is one who is permitted to enter or remain on land for a purpose of the owner, he enters by invitation, expressed or implied. The owner of the land, in this case Merck, who by invitation, expressed or implied, induced persons to come upon its premise is under a duty to exercise ordinary care to render the premise reasonably safe for the purposes embraced in this invitation.
When we talk about premise, we all know we're talking about the Grand Avenue softball field. Thus, it must exercise reasonable care for the invitee safely. It must take such steps as are reasonable and prudent to correct or give warning of hazardous conditions or defects actually known to it or its employees and of hazardous conditions or defects which it or its employees by the exercise of reasonable care could discover.
The question involved on this appeal is whether the trial court erred in concluding, as a matter of law, that plaintiff was an "invitee," as opposed to a "licensee" while on the ball field.
The duty owed by defendant as an occupier of land to plaintiff is dependent on plaintiff's status at the time of the accident. Snyder v. I. Jay Realty Co., 30 N.J. 303, 311 (1959); Daggett v. Di Trani, 194 N.J. Super. 185, 188-189 (App.Div. 1984). "[S]tatus is determined by the circumstances which bring the plaintiff to the property." Daggett, supra, 194 N.J. Super. at 189. As Judge Fritz noted in Daggett, "An invitee, in the legal sense, is `one who is on the premises to confer some benefits upon the invitor other than purely social.'" Id. at 189-190.
As stated in Benedict v. Podwats, 109 N.J. Super. 402 (App. Div. 1970), aff'd o.b. 57 N.J. 219 (1970):
It is true that `the duty owed by an occupier of land to third persons coming thereon is determined according to the status of such third person, i.e., invitee, licensee or trespasser. Indeed, the ascertainment of that status is an essential preliminary to the application of the standard of care to be exercised by the land occupier. [Cases cited.]' Snyder v. I. Jay Realty Co., 30 N.J. 303, 311 (1959).

*418 A `social guest' has been defined as a gratuitous licensee in that while he is on the premises of another as a result of an `invitation' in the laymen's sense of the word, he is not an `invitee' within the legal meaning of the term. The social guest enjoys the hospitality of the host and expects that the host will take the same care of him as he does of himself and his family. However, the host must warn a social guest of risks of harm or dangerous conditions of which the host has knowledge and the guest is unaware. Berger v. Shapiro, 30 N.J. 89, 97-98 (1959); Restatement of Torts 2d (1965), § 342.
On the other hand, the duty of care owed by an occupier of land to his `invitee,' legally understood, as the trial court properly charged, `is to use reasonable care to make the premises safe, and this includes the duty to make a reasonable inspection to discover defective conditions.' Handleman v. Cox, 39 N.J. 95, 111 (1963). [109 N.J. Super. at 406-407].
We conclude that employee morale, although intangible, constitutes some "benefit" beyond that which is purely social and is therefore sufficient to classify plaintiff as an invitee. It was long recognized in the context of claims for workers' compensation benefits that company-sponsored or encouraged employee softball teams produce a benefit to the employer in terms of improved employee morale. Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), rev'g on dissent, 63 N.J. Super. 444, 456, 466-469 (App.Div. 1960) (Conford, J.A.D. dissenting); Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 593-594 (1959).
By L. 1979, c. 283, § 1, the Legislature decided that injuries sustained during recreational or social activities should no longer be compensable under the Workers' Compensation Act unless such "activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale...." N.J.S.A. 34:15-7. See Sarzillo v. Turner Const. Co., 101 N.J. 114, 117-120 (1985). Defendant argues that by virtue of the amendments to the Workers' Compensation Act, the benefits received by the employer are no longer relevant with respect to a common law claim.[1] However, we conclude that while employee morale is no longer *419 relevant to render compensable an injury sustained in the course of recreational activity, the benefit may nevertheless suffice for purposes of evaluating the employee's status as an invitee.
Here, defendant provided the fields for the teams' use and provided for their maintenance. Defendant also provided bats and balls and allowed solicitation of players through the company newspaper. Thus it is evident that defendant encouraged this activity. We conclude that defendant would not have absorbed the cost of the equipment and maintenance of the fields if it did not believe that it would in some way benefit from the activity. In Complitano, supra, the Supreme Court, by adopting Judge Conford's dissent, concluded that the employer's sponsorship of the teams "was motivated, in part, by the desire for better management relations with the employees engaged in the sponsored activity", 63 N.J. Super. at 467 and that, "There is nothing insubstantial about the commercial value of that kind of good will in today's labor-management climate." Ibid. We conclude that that statement remains true in the context of present day labor-management relations and is relevant for purposes of evaluating plaintiff's status.
Moreover, the Supreme Court has held that the "economic benefit" test is not the exclusive one for determining whether an implied invitation exists. Handleman v. Cox, 39 N.J. 95, 106 (1963). In Handleman the Court referred to the "invitation test," and quoted the following explanation of that test:
Rather it [the invitation test] bases `invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe `that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, `and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. * * *' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety. [Id. at 108-109 quoting 2 Harper & James Torts, § 27.12 at 1479 (1956)].
The Court further explained:
... It is not so much a lack of economic benefit to the occupier which deprives persons lawfully upon the premises of the status of invitee, but, `[i]t is rather *420 the fact that the premises obviously are not provided for such a purpose; that the visitor is not solicited or encouraged to come for such an end; in short, that he must understand that his presence will be suffered at most, and that he is not invited to come.' [Citation omitted] [39 N.J. at 109 emphasis in original.]
The reason for the different status of a licensee or social guest is that he is presumed to understand that he will be "on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any preparations made for his safety." Id. at 109-110.
We believe that this test applies in common law suits by employees where the accident itself is not compensable under the worker's compensation statute. Defendant obviously intended that the fields be used by its employees for softball, since its grounds crew maintained the fields for that purpose and it provided equipment such as bats and balls. That employees could reasonably expect that the fields had been prepared for their safety is evident from the fact that they contacted defendant's grounds supervisor to find out when the fields would be ready for use. This is clearly not a case where the employees' use of the fields was merely tolerated or "suffered" by the employer.
The facts pertinent to the question of plaintiff's status were not substantially disputed, and, at least in this case where the facts were not the subject of any material dispute, we conclude that plaintiff's status as an invitee was properly decided by the judge rather than the jury. As stated by Judge Kilkenny in Benedict v. Podwats, supra, "The facts were not in dispute, so that there was no need for jury intervention to determine factual issues.... Upon the undisputed facts, [his] legal status was properly a question of law to be determined by the trial judge. Certainly, he was better qualified than the jury to determine the legal conclusion to be drawn from the uncontradicted facts." [109 N.J. Super. at 408].
We conclude that the remaining issues raised by defendant do not warrant extended discussion. See R. 2:11-3(e)(1)(A), (B), (C), (E). Accordingly, the judgment is affirmed.
NOTES
[1] Defendant does not dispute that where an injury is not compensable under the the workers' compensation statute, a common law remedy is available. See Imre v. Riegel Paper Corp., 24 N.J. 438, 450 (1957). See also Millison v. E.I. duPont de Nemours & Co., 101 N.J. 161 (1985); N.J.S.A. 34:15-8.