252 N.J. Super. 295 (1991)
599 A.2d 924
EMILY S. HOPKINS, PLAINTIFF-APPELLANT/CROSS-RESPONDENT.
v.
FOX & LAZO REALTORS, JACK BURKE REAL ESTATE INC., STEVE FIELDS, PAT GUERRY, DOUGLAS M. SONIER AND BARBARA A. SONIER, HIS WIFE, DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS. AND JOHN GARVER AND SUSAN GARVER, HIS WIFE, U.S. HOMES, AND MORGAN M. DAVIS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1991.
Decided December 2, 1991.
*298 Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.
Devlin, Cittadino & Shaw, attorneys for appellant/cross-respondent (John G. Devlin, on the brief and reply brief).
Charles Peter Hopkins, II, attorney for respondents/cross-appellants (Charles Peter Hopkins, II, on the brief).
Arthur M. Greenbaum, of counsel, Douglas K. Wolfson and Judith Mendelson Richman submitted a brief on behalf of amicus curiae New Jersey Association of Realtors.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises the issue, novel in this jurisdiction, of whether a real estate broker in possession of residential premises which it is attempting to market for its principal by inviting the public to an open house has a duty to warn its invitees of a dangerous condition of the premises of which it knows or, by a reasonable inspection, should know. We hold that such a duty exists, and consequently we reverse the involuntary dismissal ordered by the trial judge at the close of the plaintiff's proofs.
On April 26, 1987, plaintiff Emily S. Hopkins accompanied her son and daughter-in-law, who were house-hunting, to an open house in Plainsboro to which they had been invited by a salesperson employed by defendant broker, Fox & Lazo Realtors. *299 According to plaintiff's testimony, corroborated by her daughter-in-law, they entered the house, saw no one, and started to tour it on their own. They turned left from the foyer into the living room, walked from there to the dining area and from there to the kitchen, where a broker's representative greeted them and apparently left them free to continue their tour unaccompanied. The kitchen led to a family room which was one step higher than the front portion of the house. There were also a powder room and a laundry room on the higher level. Plaintiff waited in the family room while her family viewed the patio and outdoors. When she heard them reenter the house, she intended to meet them in the foyer where the staircase to the second floor was located. She started down the hallway from the laundry room unaware that there was a step down from the hall to the foyer. The floor on both levels and the step itself were covered with the same patterned vinyl, camouflaging, she asserts, the difference in the two levels. In any event, not expecting the step to be there, she missed her footing, fell, and suffered a serious fracture of her right ankle.
Although plaintiff had joined other defendants, by the time of trial only the defendant-broker and its agents remained in the case.[1] Plaintiff's theory of action against the broker was that it owed her, as a business invitee to premises in its possession, the duty to warn her of risks known to it or which a reasonable inspection would have revealed. Defendant moved for an involuntary dismissal of the complaint pursuant to R. 4:37-2(b) arguing first, that there is no such duty, and second, that plaintiff had failed to demonstrate, in the absence of expert opinion, that the location and condition of the step constituted a dangerous condition. As to the latter contention, the trial *300 judge was satisfied that plaintiff's proofs were sufficient to raise a jury question. It was his view that a jury could determine, as a matter of its common experience and without expert assistance, whether the presence of a five and three-quarter inch step in the hallway without any change in the floor covering of the two levels created a foreseeable risk that a stranger to the layout of the house would miss her footing and fall. The trial judge did, however, agree with defendant that its nexus to the house was insufficient to impose any duty upon it deriving from its defective condition. Plaintiff appeals from the dismissal of her complaint accordingly ordered, and defendant cross appeals from the ruling that plaintiff had proved a prima facie case of defective condition despite her failure to call an expert witness.
We find no merit in the cross appeal. We agree with the trial judge that the risk, if any, posed to a stranger to the house by the location of the step and its obscuring by reason of the continuous floor covering was a matter well within the understanding and experience of the ordinary juror. See Berger v. Shapiro, 30 N.J. 89, 152 A.2d 20 (1959) (whether missing brick in top step of porch is a negligently maintained defective condition held to constitute a jury question). Tripping on a step which one is not expecting and which is difficult to see does not involve a matter "so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982). See also State v. R.W., 104 N.J. 14, 30, 514 A.2d 1287 (1986).
Since we are satisfied that plaintiff established a prima facie case of a defective condition, we address the question of whether the broker can be held responsible for the injuries she sustained as a result thereof. The law in this jurisdiction respecting the obligations of an occupier of land to those coming upon it is clearly established. Traditionally, the nature of the duty owed by the occupier depends on the status *301 of the third person, that is, whether an invitee, a licensee or a trespasser. See, e.g., Snyder v. I. Jay Realty Co., 30 N.J. 303, 311, 153 A.2d 1 (1959); Russell v. Merck & Co., 211 N.J. Super. 413, 417, 511 A.2d 1247 (App.Div. 1986). The duty owed to an invitee is to use reasonable care to make the premises safe, including the making of a reasonable inspection to discover defective conditions. See, e.g., Butler v. Acme Markets, Inc., supra, 89 N.J. at 275, 445 A.2d 1141; Handleman v. Cox, 39 N.J. 95, 111, 187 A.2d 708 (1963); Benedict v. Podwats, 109 N.J. Super. 402, 406-407, 263 A.2d 486 (App.Div.), aff'd o.b., 57 N.J. 219, 271 A.2d 417 (1970). If the invitee is a social guest, however, the duty is of narrower scope, encompassing only the obligation to warn of risks of harm or dangerous conditions of which the host has knowledge and the guest is unaware. Berger v. Shapiro, 30 N.J. 89, 97-98, 152 A.2d 20 (1959); Benedict v. Podwats, supra.
Defendant does not argue with these general principles. Its assertion rather is that the broker's nexus to his principal's premises is too remote and too transient to justify the imposition upon him of any occupier's liability at all. We disagree. It is evident that in taking possession of his principal's property for the conduct of the open house, the broker is, in effect, using his principal's property as his own place of business. It is moreover clear that the persons responding to the invitation to attend the broker's open house, are his business invitees as well as the principal's. We consequently believe that the broker who extends the invitation must bear some degree of responsibility for the protection of these invitees from harm.
It is well settled that liability may be imposed upon a person not himself the occupier of land but who conducts an activity upon the land on behalf of the occupier. As the rule is stated by the Restatement (Second) of Torts § 383 (1969):
One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.
*302 See also Milacci v. Mato Realty Co., Inc., 217 N.J. Super. 297, 302, 525 A.2d 1120 (App.Div. 1987). The question then is the scope of the broker's duty. We think it clear that ordinarily the scope of the duty deriving from the conduct of an activity on another's land must be defined in terms of the activity itself. Liability in that circumstance must be determined by the nature of the risks attendant upon the conduct of that activity, the foreseeability of those risks, and the reasonable expectations of those coming upon the premises because of that activity.
Considered in this light, we are satisfied that the scope of the broker's duty is readily definable, combining elements of the duty of the social host and of the occupier invitor. As in the case of the social host, the broker has a duty to warn his invitees of dangerous conditions on the premises of which he has actual knowledge and which he should expect that the invitees will not discover for themselves. We are also satisfied that, as in the case of the occupier invitor, he has as well a duty to make a reasonable inspection of the premises prior to the arrival of his invitees to determine if there are any reasonably discoverable dangers requiring such a warning. See Restatement, supra, § 343.
The broker is clearly not a guarantor of the safe condition of the premises. He is not responsible for latent defects of which he has no knowledge. He is not required to correct any defects of which he does have knowledge. He is not required to warn against any dangers beyond those which would be revealed by a reasonable broker's inspection designed to assure the safety of prospective buyers touring the house. But the broker must take a modicum of care to assure, by appropriate warning, the reasonable safety of those whom he invites to the premises in his own economic interest. We are satisfied that plaintiff's proofs established a prima facie case of a break of the broker's duty here.
We note that the precise issue of the duty of care of a broker conducting an open house has, insofar as our research is able to *303 determine, been addressed in only one other jurisdiction. In Jarr v. Seeco Const. Co., 35 Wash. App. 324, 666 P.2d 392, 395 (1983), the court, on the basis of § 383 of the Restatement, reached the same conclusion we reach here, holding that a "realtor showing property thus may be held liable for harm caused thereby under a theory of premises liability." See also Coughlin v. Harland L. Weaver, Inc., 103 Cal. App.2d 602, 230 P.2d 141 (1951). We are aware of the contrary conclusion reached by Christopher v. McGuire, 179 Or. 116, 169 P.2d 879 (1946), and Turner v. Carneal, 156 Va. 889, 159 S.E. 72 (1931), in the context of a broker showing a house to a single prospect. We regard those holdings as inapplicable here.
Reversed and remanded for a new trial consistent with this opinion.
NOTES
[1] Plaintiff's action against the architect who designed the house was the subject of Hopkins v. Fox & Lazo Realtors, 242 N.J. Super. 320, 576 A.2d 921 (App.Div. 1990), in which we reversed the denial of that defendant's motion for summary judgment on limitations grounds pursuant to N.J.S.A. 2A:14-1.1. We are advised that the action against all other parties terminated by way of covenants not to sue.