**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1175-17T1

TAMMY NATALE,

      Plaintiff-Appellant,

v.

RICHARD NIGRO and
GLOUCESTER TOWNSHIP,

      Defendants-Respondents,

and

CAMDEN COUNTY, TOWN OF
BLACKWOOD, and STATE OF
NEW JERSEY,

      Defendants.

_____

        Argued November 26, 2018 – Decided April 2, 2019

        Before Judges Sabatino and Mitterhoff.

        On appeal from Superior Court of New Jersey, Law
        Division, Camden County, Docket No. L-0468-16.

        Craig A. Altman argued the cause for appellant.

Albertina M. Amendola argued the cause for respondent Richard Nigro (Law Offices of Terkowitz & Hermesmann, attorneys; Albertina M. Amendola, on the brief).

Jaunice M. Canning argued the cause for respondent Gloucester Township (Law offices of William E. Staehle, attorneys; Jaunice M. Canning, on the brief).

PER CURIAM

Plaintiff Tammy Natale appeals the trial court's grant of summary judgment in favor of defendants Richard Nigro (Nigro) and Gloucester Township (the Township). We affirm in part and reverse in part.

I.

We recite the relevant facts from the record. This case arises from a February 6, 2014 accident in which plaintiff was injured after she slipped and fell on a patch of ice as she was walking to her vehicle. Her car was parked next to the house she shared with defendant Richard Nigro. Plaintiff and Nigro have been "significant others" for at least twenty-nine years, and they share three adult children, all of whom were living at the property on the date of plaintiff's fall. Nigro purchased the subject property in 1997, and although plaintiff's name was not on the deed, she lived there with Nigro without interruption from 1997 until the couple and their children moved out of the property in April 2016.

Neither plaintiff nor the children paid rent to live in the house. Rather, Nigro paid the mortgage on the house and all of the bills were in his name.

Both plaintiff and Nigro parked along the side of the property. On February 6, 2014, at approximately 9:15 a.m., plaintiff fell and broke her leg while walking to her car. Plaintiff testified that her left leg slid out from under her and she landed on her right knee. She slipped on a large patch of ice located behind her car. There was a snowfall approximately one or two days before the accident. The parties dispute the conditions on the morning of the fall. Nigro contended that there was not enough snow for him to use a snow-blower, but admitted that it was "a couple inches." Plaintiff contends that it snowed approximately six inches.

Plaintiff and Nigro each testified that it was Nigro who removed snow and ice conditions as necessary and that he used a snow-blower, a shovel, and salt as needed to address winter conditions at the property. Nigro testified that he did not shovel or put salt in the area where plaintiff fell after it snowed, but plaintiff believes Nigro had shoveled that morning.

Nigro contends that it was the Township's responsibility both to clear the snow and ice from the area along the side of the house and to fix the divots because the area was owned by the Township. He claimed that there were

3

"divots" along the side of the house where plaintiff parked her car, and he testified that water would puddle up and freeze inside the divots if the weather and temperature allowed. Nigro faulted the Township for allowing the deterioration of the roadway leading to the formation of the divots, which he asserted were a cause of the icy conditions leading to plaintiff's fall. Notwithstanding his belief that the accident site was owned by the Township, Nigro performed snow removal in the area of plaintiff's fall.

Kevin Bucceroni has been the road supervisor in Gloucester Township since approximately 2014. As the road supervisor, he is in charge of trash pickup, brush pickup, snow removal, potholes, curbing, and storm water management. Streets in the Township are required to be inspected at least once a year. Streets are inspected also in response to complaints. When Bucceroni drives through a particular street, he looks for potholes, crumbling curb, and crumbling street. He does not look for issues that exist on private property. Bucceroni did not inspect the road adjacent to the side of the property prior to plaintiff's fall. According to Bucceroni, the land survey depicting the area where plaintiff fell did not reflect any property owned by the Township. Rather, according to Bucceroni, the area that Nigro testified belonged to the Township is a "right-of-way," which means that the Township is permitted to use the

property if it needs it. Bucceroni testified that in the area surrounding the property, there is no sidewalk or curb; accordingly, the entire area from the asphalt to the home built on the property belonged to Nigro and would be his responsibility.

Both the Township and Nigro moved for summary judgment. After hearing oral argument, the trial court granted summary judgment in favor of both defendants. Regarding the Township's motion, the trial court found that even if the area in which plaintiff fell belonged to the Township, and even if the Township had constructive notice of the condition of the area in which plaintiff fell, "[t]here's no reasonable jury that could conclude that the Township's reaction was palpably unreasonable." Regarding Nigro's motion, the trial court found that plaintiff was a social guest, not an invitee, and that no reasonable jury could find that plaintiff did not realize that divots existed alongside the property.

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the

> competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

In reviewing a grant of summary judgment, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 536 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)). If there is no issue of fact, we give no special deference to the trial court's rulings on matters of law. Templo Fuente, 224 N.J. at 199 (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Summary Judgment in Favor of the Township

The trial court dismissed the claims against the Township based on its conclusion that no reasonable jury could conclude that its actions were palpably unreasonable. We find that the court properly granted summary judgment in favor of the Township, but for other reasons. In that regard, while conceding that she slipped and fell on ice, plaintiff contended that the Township contributed to the fall by failing to correct a dangerous condition on public

6

property – namely, the divots that formed at the line between the road and the property. A picture on which plaintiff marked an "X" indicating the location of her fall, however, clearly showed an area completely covered with ice and/or snow, and does not depict any divots. Irrespective of the issue whether the ice formed after a divot filled with water, the cause of plaintiff's fall was not stepping in a depression but slipping on an ice patch.

Therefore, with respect to the Township, the issues of whether the Township owned the property, whether the divots were a dangerous condition on public property, and whether the Township's failure to correct the condition, are not pivotal as to the issue of the Township's liability on the facts presented. As the accident occurred when plaintiff slipped and fell on ice and/or snow, it is clear that, even assuming the Township owns the property, it is undoubtedly immune from liability based on its entitlement to ice and snow immunity.

The Tort Claims Act provides immunity to public entities and "any defenses that would be available to the public entity if it were a private person." N.J.S.A. 59:2-1. Snow removal is a government act that does not give rise to tort liability. See Miehl v. Darpino, 53 N.J. 49, 54 (1968). We affirmed the snow removal immunity established in Miehl after the passage of the Tort Claims Act. See Manca v. Borough of Hopatcong, 157 N.J. Super. 67, 73 (App.

Div. 1978). Furthermore, the Supreme Court reaffirmed the snow removal immunity when it stated:

> The economy of the State and the safety of its residents depend on an effective and swift response to snowfalls. That response requires cooperation and coordination of each level of government. Unified governmental action obviously would be inhibited if each public entity factored the threat of tort liability into its individual determination of how to conduct snow-removal activities.
>
> [Rochinsky v. State of N.J., Dep't of Transp., 110 N.J. 399, 412-13 (1988).]

The Court found "no clear evidence of the Legislature's intent to abrogate the immunity established by Miehl. To the contrary, we believe the practical effect of Miehl's continued applicability is consistent with the underlying goals and purposes of the Act." Id. at 412; see also Lathers v. Twp. of West Windsor, 308 N.J. Super. 301, 304 (App. Div. 1998) ("In this case, the municipal employees shoveled the sidewalk but, under plaintiff's theory, were negligent in not preventing melting snow from running onto the adjacent sidewalk and refreezing, or removing it once it accumulated there. In our view, this is the type of activity that the Miehl Court specifically intended to immunize."); Farias v. Twp. of Westfield, 297 N.J. Super. 395, 402 (App. Div. 1997) ("We have no doubt that ice, even if hidden by a covering of snow, is among the kind of

circumstances contemplated by the <u>Miehl</u> Court, when it stated: '[t]he unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time.'").

Although snow and ice immunity is raised for the first time on appeal, it is a long-standing principle underlying appellate review that "appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion." <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001); <u>accord</u> <u>State v. DeLuca</u>, 168 N.J. 626, 631 (2001) (finding search constitutional under different exception than that relied upon by trial court). Because plaintiff was injured when she admittedly slipped and fell on ice and snow, the trial court properly dismissed the claims against the Township.

<u>Summary Judgment in Favor of Nigro.</u>

The trial judge dismissed the claims against Nigro based on his conclusion that plaintiff was a social guest, and that defendant had no duty to warn her of conditions that she could reasonably have discovered. On appeal, plaintiff argues that the trial court erred in its legal classification of plaintiff as a social guest, and argues that she is more properly classified as a business invitee because she contributed to the household both monetarily by paying for

defendant's car insurance, and by performing services such as cleaning that benefitted defendant. As an invitee, plaintiff argues, Nigro owed her a duty to warn or make safe "any dangerous conditions on [the property] that he either k[new] about or should have discovered." In the alternative, plaintiff contends that if she were to be characterized as a licensee, Nigro still had a duty to warn her about, or make safe, the divots along the side of the house because he knew they existed and she did not know they existed.

Nigro argues the trial court properly granted summary judgment in his favor. He contends the trial court correctly determined that plaintiff was a licensee, not an invitee. As a licensee, according to Nigro, plaintiff was not entitled to have Nigro inspect the property or discover any defects that might cause injury. Nigro further argues that even if he knew about the condition that caused plaintiff's injury, he only had a duty to warn about dangers that plaintiff "could not reasonably be expected to discover."

Whether a party owes a legal duty, and the scope of that duty, are both questions of law for the court to decide. Carvalho v. Toll Bros. and Dev., 143 N.J. 565, 572 (1996). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, 140 N.J. at 378.

The traditional common law notions of premises liability divide persons on the premises into distinct categories. "An invitee . . . is 'one who is on the premises to confer some benefits upon the invitor other than purely social.'" Daggett v. Di Trani, 194 N.J. Super. 185, 189-90 (App. Div. 1984) (quoting Berger v. Shapiro, 30 N.J. 89, 96 (1959)). An owner of property owes an invitee "a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993).

"A lesser degree of care is owed to a social guest or licensee, whose purposes for being on the land may be personal as well as for the owner's benefit." Id. at 433; see also Longo v. Aprile, 374 N.J. Super. 469, 473 (App. Div. 2004). "[T]he owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware." Hopkins, 132 N.J. at 434. The host need not warn the social guest of a known dangerous condition if the guest would observe the condition "by reasonable use of the facilities." Tighe v. Peterson, 175 N.J. 240, 241 (2002). "[T]he host need

11

not undertake to make improvements or alterations to render his home safer for those accepting his hospitality than for himself." Berger, 30 N.J. at 97.

However, if the facts in a given case do not fit into any of the above categories, the court must undertake a general duty analysis. See Hopkins, 132 N.J. at 438. In Hopkins, the Court described this general duty analysis:

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [Id. at 539 (citations omitted).]

We find that plaintiff, who is the significant other of defendant Nigro, and who has lived on the premises as part of a family unit which includes the couple's three adult children, does not fit neatly into any of the traditional classifications of invitee, licensee, or trespasser. Accordingly, we must undertake a general duty analysis weighing the relationship of the parties, the nature of the attendant

risk, the opportunity and ability to exercise care, and considerations of public policy.

Concerning the nature of the relationship, Nigro and plaintiff have been in a long-term relationship spanning decades. As part of that relationship, they have mutually agreed upon a division of the household responsibilities. Plaintiff, for instance, pays certain of the household expenses and cleans the house. Nigro pays the mortgage and, pertinent to this appeal, is responsible for shoveling and salting after a snowfall. Nigro's duty thus arises from the agreed-upon division of labor, and a jury could conclude that plaintiff relied upon his past conduct in assuming that there would be no ice on the pathway each of them took to get to their cars.

The nature of the risk tilts in favor of imposing a duty as uncleared ice is a well-recognized slipping hazard, and it is highly foreseeable that the condition would lead to some injury. Nigro had the ability and the opportunity to correct the condition, as he was aware of the weather conditions, he was aware that plaintiff had to get to work, and he was aware of the path plaintiff took to get to her car. Moreover, the accident occurred after 9:00 a.m., not in the middle of the night or in the wee hours of the morning.

A-1175-17T1

Finally, public policy favors the imposition of a duty to prevent foreseeable injury to plaintiff and other foreseeable users of the property by maintaining it free from ice and other hazardous conditions.

For these reasons, the trial court erred in its conclusion that plaintiff was a social guest. We find that the facts of this case favor the imposition of a duty upon Nigro to properly clear the ice and snow pursuant to the parties' agreement, which is not in dispute. The remaining disputes concerning whether defendant cleaned the area of plaintiff's accident after the snowfall and the condition of the property on the date of the accident are fact issues that cannot be resolved on summary judgment. Therefore, we reverse the trial court's grant of summary judgment to Nigro, and we remand for further proceedings.

Affirmed in part, reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1175-17T1