**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5225-16T4

FRED KATZ and MARLA
KATZ,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

CHARLES E. VOORHEES,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued October 30, 2018 – Decided November 26, 2018

      Before Judges Hoffman, Geiger and Firko.

      On appeal from Superior Court of New Jersey, Law
      Division, Burlington County, Docket No. L-2675-14.

      Christa F. High argued the cause for appellants/cross-
      respondents (Law Offices of Daniel J. Siegel, LLC,
      attorneys; Daniel J. Siegel, on the briefs).

      Steven Antinoff argued the cause for respondent/cross-
      appellant (Parker Young & Antinoff, LLC, attorneys;
      Steven Antinoff, on the briefs).

PER CURIAM

Plaintiffs Fred and Marla Katz[1] appeal from the summary judgment dismissal of their slip and fall negligence complaint. Defendant Charles Voorhees cross-appeals from an earlier order which effectively vacated an order confirming a no-cause arbitration award in defendant's favor. For the following reasons, we vacate and remand the summary judgment dismissal of plaintiff's complaint, and affirm on defendant's cross-appeal.

I.

We begin with a summary of the pertinent facts, viewed in the light most favorable to plaintiffs, the parties opposing summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see R. 4:46-2. On a rainy day in June 2013, plaintiff went to defendant's home on a service call, in the course of his employment as an air-conditioning technician. As plaintiff inspected the unit, defendant stood next to him, holding an umbrella over both of them. When plaintiff started to walk around the house to access his service vehicle, defendant encouraged him to walk through the house to avoid the rain. After putting cloth booties over his shoes, plaintiff followed defendant through

_____

[1] For ease of reference, we refer to Fred Katz individually as plaintiff; his wife, Marla Katz, sues per quod.

the house and into a mudroom, which had a doorway to access steps leading to a garage. Defendant did not wipe his shoes on a mat in the mudroom before descending seven steps ahead of plaintiff to the garage floor. As he walked from the mudroom into the garage, defendant did not turn on the garage overhead lights; instead, he hit the button to open the garage door. The light on the garage door opener provided only dim light as plaintiff began to descend the steps from the mudroom. Defendant's stairs consisted of unusually steep risers with narrow treads.

According to plaintiff, when he "stepped on the first step," he fell backwards, and "went down all the steps," sustaining serious injuries.[2] Plaintiff was "shocked" to learn, after falling, that there were more than two or three descending steps. He also stated he did not see any handrail before he fell. Additionally, plaintiff claims that immediately after he fell, defendant ran over to him and said, "Are you okay[?] I should have warned you." He also told plaintiff that his son fell there, and got hurt.

Plaintiff further claims that when he stood up, he turned and looked at the steps, and began touching them because he "was curious why [he] fell." Plaintiff

_____

[2] Plaintiff's injuries included a right rotator cuff tear, a left elbow biceps tendon rupture, and a right biceps tear, requiring multiple surgeries.

A-5225-16T4

stated that he remembers "touching the steps and they [were] shiny, [and] very slippery." Specifically, plaintiff stated he was feeling "one of the top" stairs at this time.

Defendant's house was built in 1966. In the twelve years he lived there before plaintiff's accident, defendant never repaired or updated the garage stairs. Plaintiff submitted a report from a premises liability expert, Ronald Cohen, P.E. After reviewing deposition testimony and physically examining the steps, Cohen concluded that plaintiff's fall was the result of an "overstep," because the end of his foot extended beyond the edge of the step. He opined that tread depths should be "eleven inches minimum," which meant defendant's treads were undersized by almost four inches, in violation of "long standing engineering practice," and several building codes, including the BOCA[3] National Building Code of 1987. Cohen further opined that defendant should have verbally warned Katz of the shallow tread depths. Other defects noted by Cohen were an ineffective handrail which did not extend to the garage floor; failure to maintain uniform treads and risers; and failure to provide an adequate stair landing.

Cohen noted that the stairs' "effective tread depths varied and the effective depth of the top/incident tread was 7-1/16 inches," while a "men's size [nine]

---

[3] BOCA stands for Building Officials and Code Administrators.

foot is 10-3/8 inches long and a size [ten] is 10-5/8 inches long. A corresponding work boot length would be about 12-3/8 inches and 12-5/8 inches, respectively." Based on these facts, Cohen found that plaintiff's fall "was consistent with an overstep," which occurs when "too much of the foot projects beyond the [tread] nosing; the body's full weight is transferred to the leading foot, which may slide over the edge, causing a loss of balance." Cohen further opined that in order for plaintiff to have avoided overstepping, he "would have had to know to descend with his feet turned outward in a duck-like manner." Cohen therefore concluded, "Absent a warning marker and because [plaintiff] was unfamiliar with the residence, at the very least [defendant] should have provided a verbal warning to be careful because the stair tread depths were shallow."

Defendant's expert, Keith Bergman, P.E., did not dispute the contention that defendant's stairs were not code compliant on the date of plaintiff's accident. Instead, he expressed the opinion that since New Jersey did not adopt the BOCA building code until 1975, and since defendant's home was constructed "circa 1965," the opinions of plaintiff's expert were "unreasonable and inappropriate."

The motion court granted defendant's motion for summary judgment, after ruling that Cohen's report constituted "a net opinion." The judge explained that

because he would "not allow the expert to testify . . . there's no evidence now, [so] I'm going to dismiss the plaintiff's complaint."[4] This appeal followed.

## II.

We review a trial court's grant of summary judgment de novo. Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 414 (2016) (citation omitted). "[The] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted). Summary judgment may be granted when the evidence before the trial court on the motion, viewed in a light most favorable to the non-moving party, indicates there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); see also Brill, 142 N.J. at 540. In reviewing an order granting or denying summary judgment, we employ the same standard as the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill,

---

[4] The judge provided no separate basis for summary judgment; he merely assumed that, without Cohen's testimony, plaintiff had no viable claim.

142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). To make the determination, the trial judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. The judge must assume the non-moving party's version of the facts as true and give that party the benefit of all favorable inferences available in the record. Id. at 536.

Broadly speaking, to recover on a negligence claim, a plaintiff must prove 1) the defendant owed the plaintiff a duty, 2) the defendant breached that duty, and 3) the breach of the duty proximately caused the plaintiff's injury. Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288 (1984). In a premises liability case, as here, the type of duty owed by defendant to plaintiff generally depends upon plaintiff's classification. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993) (noting that the three classifications are business invitee, licensee, and trespasser). Business invitees are defined as individuals that "come by invitation, express or implied." Snyder v. I. Jay Realty Co., 30 N.J. 303, 312 (1959) (citation omitted). The duty owed to business invitees, such as plaintiff here, is a "duty of reasonable care to guard against any dangerous

conditions on [his] property that [defendant] either kn[ew] about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions." Hopkins, 132 N.J. at 434. See also, Daggett v. Di Trani, 194 N.J. Super. 185, 192 (App. Div. 1984) (residential defendant's duty to business invitee is to use reasonable care to make premises safe; duty includes obligation to make reasonable inspections to discover defective conditions).

"A homeowner is intimately acquainted with his or her residence and consequently aware of many of the problems that remain hidden to the untrained or unfamiliar eye." Hopkins, 132 N.J. at 445. At a minimum, reasonable care requires a homeowner to warn a business guest of any defects or dangerous conditions of which the homeowner is aware or should be aware. See Filipowicz v. Diletto, 350 N.J. Super. 552, 560 (App. Div. 2002).

## A.

We first address the judge's determination that plaintiff could not sustain his burden of proof to establish that defendant violated a duty to him without expert testimony. In determining whether a plaintiff must provide expert testimony, a court must consider "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid

8

judgment as to whether the conduct of the [defendant] was reasonable." <u>Davis v. Brickman Landscaping, Ltd.</u>, 219 N.J. 395, 407 (2014) (alteration in original) (quoting <u>Butler v. Acme Mkts., Inc.</u>, 89 N.J. 270, 283 (1982)). In those instances, the jury would have to "speculate without the aid of expert testimony." <u>Torrey v. Schripps, Inc.</u>, 342 N.J. Super. 419, 430 (App. Div. 2001) (citing <u>Kelly v. Berlin</u>, 300 N.J. Super. 256, 268 (App. Div. 1997)).

Basic principles of negligence law routinely allow lay jurors to determine if a defendant acted unreasonably. <u>Model Jury Charge (Civil)</u>, 5.10A, "Negligence and Ordinary Care" (approved before 1984). Basic notions of reasonable behavior do not necessarily require an expert to testify regarding standards of care, particularly where the case does not involve suit against a licensed professional covered by the Affidavit of Merit statute. <u>Jacobs v. Jersey Cent. Power & Light Co.</u>, 452 N.J. Super. 494, 505 (App. Div. 2017).

In many situations, expert testimony will not be necessary to establish that the defendant failed to act as a reasonable person. <u>See</u> <u>Hopkins</u>, 132 N.J. at 449-51. <u>See also</u> <u>Butler v. Acme Markets, Inc.</u>, 89 N.J. 270, 283 (1982) (emphasis omitted) (citation omitted) ("no general rule or policy requiring expert testimony as to the standard of care"). <u>Accord</u>, <u>Crawn v. Campo</u>, 136 N.J. 494, 508 (1994). As the Court observed in <u>Hopkins</u>, "some hazards are relatively commonplace

and ordinary and do not require the explanation of experts in order for their danger to be understood by average persons." 132 N.J. at 450. In Hopkins, the plaintiff lost her footing when she stepped down from a home's hallway into its foyer, and both surfaces were covered by vinyl material that had the same pattern. Id. at 432. The Court concluded that a jury would be capable of deciding, without expert assistance, whether the step constituted a dangerous condition. Id. at 450-51. See also Campbell v. Hastings, 348 N.J. Super. 264, 270 (App. Div. 2002) (expert testimony not necessary to explain danger created by unlit sunken foyer); Parmenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 511 (App. Div. 1957) (expert testimony not required to prove that wet floor is likely to be slippery).

Based upon the photograph of defendant's stairs, the detailed measurements of the stairs, and plaintiff's description of the circumstances of his fall, we conclude that plaintiff was not required to provide expert testimony to establish that defendant violated a duty to him as an invitee. We conclude that average persons could readily understand the potential hazards presented by undersized, wet stairs encountered with inadequate lighting and no warning.

10

B.

We next address the judge's determination to bar the report of plaintiff's expert as constituting a net opinion. A net opinion consists of nothing more than "bare conclusions, unsupported by factual evidence." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); see also Townsend v. Pierre, 221 N.J. 36, 55 (2015). An expert's bare conclusions, unsupported by factual evidence, are inadmissible. Buckelew 87 N.J. at 524.

Contrary to the motion judge's ruling, we do not find Cohen's report constituted a net opinion. His opinions were based – in part – on his physical inspection, which revealed tread depths significantly shorter than industry standards, to the extent that they "would not reasonably accommodate safe adult male descent without stepping with their feet turned outward in a duck-like manner." Cohen therefore proffered the plausible inference that the stairs' tread depth, along with the potential moisture and the lack of warning and lighting, caused plaintiff to "overstep" and fall backwards down the stairs.

Considered together and cumulatively, these facts reasonably explain and support the "why[s] and wherefore[s] of [Cohen's] opinion," Townsend, 86 N.J. at 494, and amount to much more than a bare conclusion. Indeed, although the BOCA violations would not constitute negligence per se, such evidence provides

11

support for Cohen's opinion that the undersized tread depth of defendant's stairs "would not safely accommodate a [shoed] adult male during normal descent."

## C.

As to causal connection, even if plaintiff could not precisely pinpoint the specific cause of the slip, there were sufficient facts from which it may be reasonably inferred that the hazardous condition identified by the expert was a proximate cause of plaintiff's injury. On this score:

> It is well settled that the existence of a possibility of a defendant's responsibility for a plaintiff's injuries is insufficient to impose liability. "In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would exclude the idea that it was due to a cause with which the defendant was unconnected. While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant."
>
> [Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 141 (1951) (emphasis omitted) (quoting Callahan v. Nat'l Lead Co., 4 N.J. 150, 154 (1950)).]

After considering all the evidence in the light most favorable to plaintiff, including how narrow and steep tread depths can lead to overstepping, coupled with the presence of multiple hazards (wet stairs and poor lighting) and the

12

absence of any warning, it is reasonable to infer that the defect in the stairs, and the hazards surrounding them at the time of the incident, probably caused the accident.

We conclude that genuine issues of material fact exist as to whether the tread depth on the stairs was both hazardous and therefore a breach of the duty owed to plaintiff, and a proximate cause of plaintiff's slip and fall, sufficient to warrant the matter to proceed to trial. We also find genuine issues of material fact as to whether defendant contributed to a hazardous condition that caused plaintiff's accident, by failing to turn on the overhead light, by walking ahead of plaintiff with wet shoes, and by failing to warn plaintiff of the stairs' unusually narrow and steep treads. Because genuine issues of material fact exist as to both breach of duty and causation, the motion court erred in granting summary judgment.

III.

We now turn to defendant's cross-appeal and address defendant's argument that the motion court erred when it vacated an order confirming a no-cause arbitration award in defendant's favor. The parties went to arbitration on August 24, 2016, and the arbitrator found in favor of defendant. In a written

13

opinion in support of the decision that defendant now challenges on his cross-

appeal, the motion judge summarized the procedural events that followed:

> On September 9, 2016, [p]laintiffs sent a Notice of
> Demand for Trial De Novo. On September 15, 2016,
> the [c]ourt contacted [p]laintiffs and informed them
> that they would require a new copy signed in blue ink
> to confirm an original signature. The requested copy
> was received by the [c]ourt on September 21, 2016[,]
> and time[-]stamped received on September 15, 2016.
> The thirty . . . day period to file a Trial De Novo expired
> on September 24, 2016.
>
> On September 28, 2016, [p]laintiffs received
> [d]efendant's Motion to Enforce Arbitration Award. On
> September 29, 2016, [p]laintiffs forwarded [d]efendant
> a copy of the Notice of Demand for Trial De Novo with
> a letter informing [d]efendant that they were awaiting a
> time stamped copy from the [c]ourt and requesting that
> [d]efendant withdraw his motion. Between September
> 29, 2016 and October 10, 2016, [the] parties
> communicated with the [c]ourt to schedule a trial date.
> On October 14, 2016, [d]efendant proceeded with his
> motion and it was granted as unopposed.

After the judge issued the order confirming the arbitration award, plaintiff

filed a motion for reconsideration. In his written opinion granting plaintiff's

motion, the judge explained that he granted defendant's motion "without any

consideration to the aforementioned facts," as "[d]efendant's motion was

unopposed." The judge determined that defendant would not be prejudiced

because "the parties were communicating with this [c]ourt in an effort to

14

schedule trial as early as September 29, 2016, and thus, [d]efendant had sufficient notice." Ultimately, the judge granted plaintiff's motion for reconsideration "based on [the] additional information they provided and most importantly, for the need to achieve equity and justice in this matter."

We review a trial court's decision to grant or deny a motion for reconsideration under an "abuse of discretion" standard. Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"Motions for reconsideration are granted only under very narrow circumstances . . . ." Fusco, 349 N.J. Super. at 462. The motion is reserved for cases where "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice . . . ." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (alteration in original) (quoting D'Atria, 242 N.J. Super. at 401).

Rule 4:21A-6(b)(1) provides,

> An order shall be entered dismissing the action following the filing of the arbitrator's award unless:
>
> (1) within 30 days after filing of the arbitration award, a party thereto files with the civil division manager and serves on all other parties a notice of rejection of the award and demand for a trial de novo . . . .

In Flett Assocs. v. S.D. Catalano, Inc., 361 N.J. Super. 127 (App. Div. 2003), the defendant filed a demand for a trial de novo from an arbitration proceeding within the thirty-day period provided by Rule 4:21A-6(b), but it failed to notify its adversaries within the same time frame. Id. at 129-30. The trial judge granted plaintiff's motion to enforce the arbitration award based on existing case law and Rule 4:21A-6(b)(1), however, we reversed, citing Corcoran v. St. Peter's Med. Ctr., 339 N.J. Super. 337, 343 (App. Div. 2001), which

> shows that our courts extend some latitude in enforcement of the service requirement of Rule 4:21A-6(b)(1) in cases where the demand has been filed within the allowed thirty-day period. It also shows that even a "clerical mistake" may provide a sufficient basis for a court declining to strictly enforce the service

16

requirement if there is "reasonable explanation" for the mistake.  Corcoran, 339 N.J. Super. at 344.

Rule 1:3-4(a) confers general authority upon the trial and appellate courts to enlarge the time allowed for taking action under the court rules.  Although certain time periods are not subject to such enlargement, R. 1:3-4(c), the thirty-day period for service of a trial de novo demand under Rule 4:21A-6(b)(1) is not one of those time periods.  Therefore, Rule 1:3-4(a) provides the requisite authority for a trial court to enlarge this time period.

[Flett Assocs., 361 N.J. Super. at 132-33.]

In applying Rule 1:3-4(a), "unless there is an overriding policy consideration that requires a stricter standard, an application for an enlargement or extension of the time for taking action under a court rule is governed by a more liberal standard than 'extraordinary circumstances,' such as the 'interests of justice' or 'good cause.'"  Id. at 133 (citations omitted).  While the Supreme Court has found that the thirty-day period for filing a demand for a trial de novo may be relaxed only upon a showing of "extraordinary circumstances," Wallace v. JFK Hartwyck at Oak Tree, 149 N.J. 605, 609 (1997) (citing Hartsfield v. Fantini, 149 N.J. 611, 618 (1997)), it also acknowledged our holding in Flett, stating that the panel "held correctly that, under the facts presented, 'a delay in satisfaction of the service requirement does not have the same deleterious effect upon efficient administration of the arbitration program as a failure to file the

demand within time.'" Vanderslice v. Stewart, 220 N.J. 385, 391 (2015) (quoting Flett Assocs., 631 N.J. Super. at 134). Therefore, it is appropriate to adhere to this court's conclusion "the requirement that a trial de novo demand be served within thirty days may be relaxed upon a showing of good cause and the absence of prejudice." Flett Assocs., 361 N.J. Super. at 134.

Here, on the motion for reconsideration, the trial judge considered facts that were not before him at the time of the order confirming the arbitration award. He considered the potential prejudice to defendant and found none. In accordance with this court's holding in Flett and Rule 1:3-4(a), the judge granted plaintiff's motion for reconsideration "based on . . . the need to achieve equity and justice in this matter." The judge did not abuse his discretion, since he applied the appropriate principles and provided a rational explanation for granting plaintiff's motion for reconsideration. We therefore affirm on defendant's cross-appeal.

Vacated and remanded, in part, and affirmed, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                    A-5225-16T4